COMMONWEALTH *vs.* LARRY WATKINS.

Middlesex. December 6, 1977. — June 20, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Constitutional Law.* Admissions and confessions, Waiver of constitutional rights, Felony-murder rule. *Waiver. Homicide. Due Process of Law,* Felony-murder rule. *Practice, Criminal,* Attendance of witnesses, Continuance, Mistrial. *Evidence,* Other offense, Admissions and Confessions. *Jury and Jurors.*

Evidence at a criminal trial that police interrogation of the defendant continued after the defendant had requested an attorney but that the questioning ceased sometime later after he again requested to use the telephone to call an attorney and that the defendant, rather than calling an attorney, called his mother and sister and then told the police he was ready to make a statement warranted findings that the later statements were not a product of his earlier illegally obtained statements since the later statements were different from the original statements [480-483]; the defendant's later interrogation, resulting as it did from his spontaneous declaration of his desire to make a further statement, was not barred by *Miranda* v. *Arizona,* 384 U.S. 436 (1966) [483-485]; the judge was warranted in finding that in making the later statements the defendant knowingly and voluntarily waived his Miranda rights [485].

The felony-murder rule, as embodied in G. L. c. 265, § 1, is not unconstitutional. [485-488]

In the circumstances the judge at a criminal trial did not abuse his discretion in denying the defendant's motions for compulsory process and a continuance to secure the attendance of a witness under arrest in another State and resisting extradition. [488-490]

At a criminal trial there was no error in denying the defendant's motion for a mistrial made on the ground that a witness had been allowed to testify that he had seen a handgun in the defendant's possession a few weeks before a shooting and to give an affirmative answer when asked by the prosecutor whether he had talked with the defendant "about any laws in Massachusetts." [490-492]

The judge at a criminal trial did not abuse his discretion in denying the defendant's motion to excuse the jury from further deliberations for the evening after they had submitted a question to the judge at a late hour. [492]

INDICTMENTS found and returned in the Superior Court on December 10, 1975.

The cases were tried before *Nelson,* J.

*Richard K. Latimer* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J.  The defendant was indicted for murder in the first degree, armed robbery, and kidnapping. Before trial, the defendant moved to suppress, inter alia,[1] certain incriminatory statements made by him to Massachusetts police officers while in custody in Louisville, Kentucky. After a pretrial hearing, the trial judge, in a statement from the bench, denied the defendant's motion. However, during the trial the judge, on his own motion, conducted another hearing on the admissibility of the defendant's statements and excluded certain portions thereof from evidence. The remaining statements were introduced in evidence at trial and the defendant was convicted on all indictments.

---

[1] We do not consider the judge's denial of another pretrial motion to suppress items of personal property since the denial of the motion is not at issue in the appeal before us.

On appeal, the defendant argues five specific assignments of error.[2] He claims that the trial judge erred in (1) refusing to exclude from the trial all statements made to the police while he was in custody, (2) denying his motion to dismiss the murder indictment on the ground that the felony-murder rule, G. L. c. 265, § 1, is unconstitutional, (3) denying his motions for compulsory process and for a continuance to secure the attendance of a witness, Theodore Watkins, at trial, (4) denying his motion for a mistrial based on the testimony of a witness to the effect that a few weeks before the crime he saw a gun in the defendant's possession, and (5) denying his motion to excuse the jury from further deliberations for the evening after they had submitted a question to the judge at a very late hour.

We hold that there was no error, and that there is no basis to modify the jury verdict or to grant the defendant any other relief under G. L. c. 278, § 33E.

Before discussing the alleged errors argued by the defendant, we review briefly the evidence introduced at the trial concerning the events surrounding the commission of the armed robbery, kidnapping, and murder. The evidence was introduced primarily through the testimony of four witnesses: Police Detective Lieutenant William Nally of the Massachusetts State police, who testified as to the statements made to him by the defendant when the latter was in custody in Kentucky; Theresa Nelson (Nelson), a female companion of the defendant, who was arrested with him in Kentucky; Fred Starling, an uncle of Nelson, with whom she was living while in Boston; and the defendant himself. The testimony of Detective Nally and of Nelson, which was similar in most respects, was essentially as follows.

[2] Other assignments of error, raised in the defendant's "Assignment of Errors," have not been briefed and are deemed waived. Mass. R. A. P. 16, as amended, 367 Mass. 919 (1975). S.J.C. Rule 1:13, as amended, 366 Mass. 853 (1974). *Commonwealth* v. *Baptiste*, 372 Mass. 700 (1977). *Commonwealth* v. *Grace*, 370 Mass. 746, 758 (1976). *Commonwealth* v. *Bys*, 370 Mass. 350, 351 (1976). *Commonwealth* v. *Mahnke*, 368 Mass. 662, 666 (1975), cert. denied, 425 U.S. 959 (1976). *Commonwealth* v. *Baker*, 368 Mass. 58 (1975).

In October, 1975, the defendant and Nelson came to Boston from Louisville, Kentucky. On November 17, 1975, in the late afternoon or early evening, they were together in Boston when Nelson hailed the driver of a green Buick automobile driving by. When the car stopped, the two entered and, after riding for a very short time, the defendant pulled out a pistol and held it on the driver.[3] Nelson searched the man, took his wallet and gave it to the defendant, who then forced the driver to get into the trunk of the car. The defendant and Nelson then drove to a place where they picked up a person known as Bobo or Beau Jack, who Nelson testified was the defendant's brother. The group drove for some time and stopped. The defendant and Bobo got out of the car, opened the trunk, and Bobo, using the defendant's gun, shot the man who was in the trunk.[4] The defendant and Nelson, with the defendant driving, brought Bobo back to his house. Nelson and the defendant then with the same car went to her uncle's (Starling's) house where they packed her belongings and left for Kentucky. Nelson further testified that she did not know whether the defendant had been drinking or using drugs on the day of the shooting, but he appeared normal and had no difficulty driving the car.

Starling testified at trial that, about two and one-half to three weeks before the shooting, he had observed the defendant with a .38 caliber handgun in his possession. However, he admitted that he did not know "much about guns" and was "[j]ust guessing" as to the gun's caliber.

The defendant was the sole defense witness at his trial, and he testified to the following effect. On November 17, 1975, he and Nelson were at his brother's house in Roxbury. About 4:30 P.M., feeling sick and dizzy from smoking marihuana and drinking, he left the house with Nelson,

---

[3] Nelson testified that the pistol was the same gun she had seen previously in the defendant's possession in Kentucky and in Boston.

[4] Detective Nally testified that the defendant told him he was angry at Bobo for shooting the man because they had planned merely to tie him up and then abandon him.

and, with her assistance, staggered to a place where Nelson flagged down what the defendant thought was a taxicab. He entered the car and fell down onto the rear seat. The next thing he remembered was hearing the voice of his brother Theodore, who was also known as Bobo and Beau Jack. At this point the defendant realized he was not in a taxicab. He heard a loud noise, and, although still sick and dizzy, he raised himself from his prone position in the back seat of the car and saw Theodore get into the driver's side of the front seat and Nelson enter the passenger's side. The car then sped away. After a stop at the house of Theodore's girl friend, the defendant drove Nelson to her house in the car which was a green Buick. They both then left for Kentucky in that car. He did not bring the gun he had in Kentucky with him to Boston, but he had acquired a small .38 caliber gun in Boston, which he displayed in the presence of Starling.

In convicting the defendant on all the indictments, the jury apparently did not believe the defendant's testimony as given above, but rather credited that of Detective Nally and Nelson.

1. *Motion to Suppress.*

In reviewing the judge's findings of fact and rulings of law on the motion to suppress, we accept the judge's resolution of the conflicting testimony, and will not disturb his subsidiary findings if they are warranted by the evidence. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 666-667 (1975), and cases cited, cert. denied, 425 U.S. 959 (1976). However, ultimate findings and conclusions of law, especially those of constitutional dimension, are open for our independent review in this appeal. *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977). *Commonwealth* v. *Mahnke, supra* at 667. *Commonwealth* v. *Murphy*, 362 Mass. 542, 551 (1972) (Hennessey, J., concurring).

We summarize the facts found by the judge in denying the motion to suppress.[5] On November 18, 1975, the body

---

[5] Although the judge's findings and rulings were filed subsequent to preparation of the summary of the record on appeal, and, consequently,

of one Edward Keen (Keen) was found in Newton, Massachusetts. Keen had died from a gunshot wound in the head. Investigation revealed that Keen was the owner of a green, 1971 Buick automobile which could not be located at the scene where the body was found or at the victim's residence in Roxbury. An all points bulletin was sent over police wires for this car.

On November 21, 1975, police in Louisville, Kentucky, responding to a telephone call, came on the defendant and Nelson who were seated in a green, 1971 Buick automobile. The occupants were recognized as persons wanted for the commission of armed robberies in Louisville. As the police approached, the car sped away and a high speed chase ensued, ending with a collision. Nelson jumped or fell from the car, while the defendant fled the scene on foot. Shortly thereafter the police found him hiding under a car and they arrested him.

The 1971 Buick automobile was towed to a police garage where it was searched. Bloodstains, items of clothing, and other evidence of a homicide were found in the trunk of the car. The Kentucky plates attached to the car did not belong to that vehicle; rather, investigation disclosed that the car was registered in Massachusetts and belonged to Keen, the victim of the shooting.

Two Massachusetts police officers, Detective Nally and Detective Lieutenant James Cox of the Newton, Massachusetts, police department, questioned Nelson at the Louisville police station on the morning of November 22, 1975, and took a statement from her in which she inculpated the defendant in the shooting of Keen. About 2 P.M. on the same day, the detectives questioned the defendant with a stenographer present. The defendant was given his Miranda warnings and indicated that he understood them. He answered a few preliminary questions, but then asked for an attorney. Detective Nally, however, continued to ques-

are not included therein, they are presently before us on our allowance of the Commonwealth's motion to enlarge the record.

tion the defendant whether he wanted to consult with an attorney before discussing anything, or whether he wanted to talk about what he had told another officer the previous day.[6] The defendant agreed to talk and he answered questions concerning the events of November 21, 1975, in Louisville. He also admitted being in Boston with Nelson in the preceding several weeks. The questioning to that point is recorded in the first eleven pages of the transcript of the stenographer who was present. The defendant then again stated that he wanted an attorney. The questioning was stopped and the defendant was allowed to use the telephone to call an attorney. He made a telephone call, after which he said he had not called an attorney, but rather had called and spoken to his mother and sister. He then told the detectives that he was ready to make a statement. The questioning resumed at 2:45 P.M., and the defendant gave inculpatory details of the circumstances leading up to and including the shooting of Keen. Detective Nally testified about this conversation at the trial.

After the voir dire during the trial, the judge ruled that when the defendant was being questioned by the Massachusetts detectives in Louisville they did not stop all questioning when he initially requested an attorney, and they did not obtain from the defendant a waiver of his right to have an attorney present.[7] The judge also ruled that the detectives should have ceased all questioning of the defendant at the point at which he first requested a lawyer, and that consequently all statements elicited from the defendant after his request and prior to his telephone call to his mother were in violation of his right to counsel and they were therefore suppressed.[8]

---

[6] The judge found that the defendant had been questioned the previous day by Louisville police and had made certain statements. These statements, however, are not the subject of a suppression motion.

[7] The judge outlined at voir dire what his decision would be when written, and the written findings and rulings are in substance the same as his initial conclusions.

[8] The suppressed statements were marked as exhibit A for the purposes of the trial voir dire, and excluded from evidence in such form.

However, both at voir dire and in his later written decision on the motion to suppress, the judge ruled that those statements given by the defendant to the detectives after he had been allowed to use the telephone to call an attorney and instead telephoned his mother were admissible. In so ruling, the judge stated that although under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), a person under custodial interrogation must be told of his right to silence and of his right to the assistance of counsel, and be afforded the opportunity to exercise these rights throughout the interrogation, under *Michigan* v. *Mosley*, 423 U.S. 96, 102-103, 104 (1975) (based on the language in *Miranda*), if such a person requests the assistance of counsel, that does not "create a *per se* proscription of indefinite duration . . . on any subject." Rather, the judge continued, the admissibility of statements made thereafter depends on whether the " 'right to cut off questioning' was 'scrupulously honored.' " See *Commonwealth* v. *Taylor*, 374 Mass. 426, 432-433 (1978); *Commonwealth* v. *Dustin*, 373 Mass. 612, 614-615 (1977), cert. denied, 435 U.S. 943 (1978).

The judge ruled: (a) that the above requirements of *Miranda* and *Mosley* were satisfied with respect to the defendant's later statements, in that, on the defendant's second request for a lawyer, the questioning ceased and he was afforded an opportunity to have counsel present during the questioning; and (b) that the fact that the defendant "later upon reflection and discussion with his mother chose not to exercise this right [to counsel] does not preclude admissibility of the statements in question." He then held that the statements made to the detectives after the telephone call were the product of a knowing and voluntary waiver of the defendant's Miranda rights and therefore admissible.

In so ruling, the judge also considered the defendant's argument that, in any event, he could not have executed a knowing and voluntary waiver because his statements to the detectives were induced by fear of reprisal, or because of pain resulting from the automobile collision or alleged police beatings. The judge found such claims to be without

merit. He found that at the time of questioning the defendant was in the presence of only Massachusetts police officers who dealt with him civilly throughout, and that he was not overborne by pain.

The defendant contends for three reasons that it was error for the judge to admit in evidence the statements made to the police. He claims (a) that his statements made after the telephone call were the product of his earlier excluded statements obtained in violation of *Miranda*, and, consequently, their admission in evidence was error; (b) that *Miranda* explicitly prescribes a *"per se"* rule that custodial interrogation must cease after a suspect requests an attorney with the result that the admission in evidence of any uncounseled statements, made after such request, is erroneous; and (c) that even if "waiver" concepts are allowed to operate as to his uncounseled statements, the prosecution here failed to meet its burden of proof in establishing waiver. Our views on these three claims follow.

(a) In claiming that his later statements must be excluded as the product of his earlier illegally obtained statements, the defendant relies on the so called "cat-out-of-the-bag" theory discussed in this court's decisions in *Commonwealth v. Mahnke*, 368 Mass. 662, 686-688 (1975), and *Commonwealth v. Haas*, 373 Mass. 545, 554 (1977). See *Commonwealth v. Amazeen, ante* 73, 79 (1978). "The cat-out-of-the-bag line of analysis requires the exclusion of a statement if, in giving the statement, the defendant was motivated by the belief that, after a prior coerced statement, his effort to withhold further information would be futile and he had nothing to lose by repetition or amplification of the earlier statements. Such a statement would be inadmissible as the direct product of the earlier coerced statement." *Commonwealth v. Mahnke, supra* at 686. See *Darwin v. Connecticut*, 391 U.S. 346, 350-351 (1968) (Harlan, J., concurring and dissenting); *United States v. Bayer*, 331 U.S. 532, 540-541 (1947); *Gilpin v. United States*, 415 F.2d 638, 642 (5th Cir. 1969). The defendant here claims that his later statements to the detectives were nothing more than the

product of his mistaken belief that he had irretrievably implicated himself by his earlier, and subsequently determined illegal, statements. As such, the defendant argues, the later statements should have been suppressed. We disagree.

The "cat-out-of-the-bag" type of analysis was described in *Commonwealth* v. *Mahnke, supra,* as applicable to cases wherein a subsequent statement is argued as involuntary because it is the product of an earlier statement found to have been "coerced," or itself "involuntary." "To be admissible, subsequent statements may not be 'merely the product of the erroneous impression that the cat was already out of the bag' (*Darwin* v. *Connecticut*, 391 U.S. 346, 351 [1968] [Harlan, J., concurring and dissenting]) because one coerced confession has let the secret 'out for good.' *United States* v. *Bayer*, 331 U.S. 532, 540 (1947)." *Commonwealth* v. *Mahnke, supra* at 683. The judge found in the present case that all statements made by the defendant, including the initial statements which he ruled had been improperly obtained, were, nevertheless, "voluntarily made" and not the result of coercion. Such findings as to voluntariness are supported by the record.

In *Commonwealth* v. *Haas, supra,* the cat-out-of-the-bag theory was peripherally employed in an instance where the defendant had made a certain incriminatory statement while under custodial interrogation, but without benefit of having received his Miranda warnings. We held that the defendant's subsequent statements were thus tainted by the initial "illegality" of the prior statement. The cat was out of the bag in that the defendant's later incriminatory statements were repetitive of the initial illegal, and similarly incriminatory, statement; the later statements were the product of the earlier one. *Commonwealth* v. *Haas, supra.* Yet, in *Haas*, the cat-out-of-the-bag line of analysis was used in conjunction with the "break in . . . the stream of events" theory. Proper police questioning, which elicited the defendant's later statements, was found to have followed the illegal interrogation closely *without* a discernible break in time or the stream of events "sufficient to insulate the latter

statements from the events which went before." *Commonwealth* v *Haas, supra* at 554. See *Darwin* v. *Connecticut, supra* at 349; *Gilpin* v. *United States,* 415 F.2d 638 (5th Cir. 1969). However, in the present case both the cat-out-of-the-bag theory and the break in the stream of events analysis employed in *Haas* fail to aid the defendant. The defendant's later statements were substantially different from, and even contradictory to, the original statements made to the detectives. Although the defendant had admitted in his initial statements that he had recently gone to Boston with Nelson and repeated this information in his later statements, the similarity ends there. The later statements, which contained the defendant's description of his involvement in the shooting of Keen, could not be deemed the "product" of his earlier statements which were void of any such admissions and which detailed in the main the defendant's activities in Louisville on the day of his arrest.

In this same vein, the "cat-out-of-the-bag" theory is inapplicable. The proverbial "cat" was not let out of the bag at the time of the defendant's initial questioning. It was only after the defendant had called his mother and expressed to the detectives his desire to make a full statement, that the cat was released from the bag.

In addition, contrary to the circumstances found in *Haas,* in this case there was a break in the stream of events between the giving of the first statements and the later ones. Before being questioned a second time, the defendant was given the opportunity to communicate with an attorney. Instead he called his mother, and, after a lengthy conversation with her and his sister, he decided to give the further statement to the police. The "temporal proximity" of the prior illegally obtained statements to the subsequent statements is overshadowed by the presence of such "intervening circumstances." *Commonwealth* v. *Fielding,* 371 Mass. 97, 113-114 (1976), quoting from *Brown* v. *Illinois,* 422 U.S.

590, 603-604 (1975). Cf. *Commonwealth* v. *Haas, supra* at 554.[9]

(b) The defendant next argues that *Miranda* v. *Arizona*, 384 U.S. 436 (1966), prescribes a *"per se"* rule that all interrogation must cease after a suspect requests an attorney, and, therefore, the defendant's later statements to the detectives should have been suppressed. We disagree. In *Miranda*, the Supreme Court stated: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 473-474. However, in *Michigan* v. *Mosley*, 423 U.S. 96, 102-103 (1975), the Court held that the *Miranda* language quoted above did not create a *"per se"* rule barring the renewed interrogation of a person once he or she has indicated a desire to remain silent. Rather, the Court held that under *Miranda* the admissibility of any statements obtained after the person in custody has decided to remain silent depended on whether the person's " 'right to cut off questioning' was 'scrupulously honored.' " *Id.* at 104. See *Commonwealth* v. *Taylor*, 374 Mass. 426, 432-433 (1978); *Commonwealth* v. *Dustin*, 373 Mass. 612, 614-615 (1977). While the Court in *Mosley* expressly refrained from discussing the effect of an individual's prior request for an attorney on any subsequent interrogation of that individual, *Michigan* v. *Mosley, supra* at 101 n.7, we think the Court's treatment of the right to silence is instructive on the issue. In

---

[9] Although the defendant does not argue the theory, for the purposes of complete review we note the inapplicability of the closely related doctrine of the "fruit of the poisonous tree" to the facts at bar. *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). We have determined that the defendant's later statements were not the product of his earlier, illegally obtained statements. As such, the later admissions cannot be deemed the "fruit" of the defendant's earlier tainted statements. The later statements came to light by means independent from the defendant's earlier statements and the prior illegal activity of the detectives in interrogating him.

*Mosley,* the Court rejected any literal application of *Miranda* by stating: "[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Id.* at 102. We believe that such an argument against a *"per se"* rule in the right to silence context applies equally in situations involving the right to counsel. See *United States* v. *Rodriguez-Gastelum,* 569 F.2d 482, 484-488 (9th Cir. 1978); *United States* v. *Grant,* 549 F.2d 942, 945-948 (4th Cir.), cert. denied, 432 U.S. 908 (1977); *United States* v. *Pheaster,* 544 F.2d 353, 366-368 (9th Cir. 1976), cert. denied sub nom. *Inciso* v. *United States,* 429 U.S. 1099 (1977); *Lindsay* v. *United States,* 542 F.2d 755, 757 (8th Cir. 1976); *United States* v. *Lewis,* 425 F. Supp. 1166, 1177-1179 (D. Conn. 1977). But see *United States* v. *Herman,* 544 F.2d 791, 796 n.8 (5th Cir. 1977); *United States* v. *Womack,* 542 F.2d 1047, 1049-1050 (9th Cir. 1976); *United States* v. *Miller,* 432 F. Supp. 382, 389-390 (E.D.N.Y. 1977).

In the present case, after the detectives asked and the defendant answered some initial questions, the defendant requested an attorney. In spite of this request, the detectives continued to interrogate the defendant until he made a second request to see a lawyer. The judge correctly suppressed all statements made by the defendant between his first and second requests for counsel. However, after the second request, the interrogation was stopped and the defendant was given the opportunity to call an attorney. The detectives did not resume interrogation of the defendant before he indicated to them that he wanted to give the further statement. They did not solicit him or apply any coercion or pressure on him. We hold that in these circumstances the defendant's spontaneous declaration of his desire to make a further statement constituted an implied, if not an express, waiver of his previously asserted desire to speak with

counsel, which waiver is permitted under the *Miranda* and the *Mosley* decisions.

(c) The defendant claims, however, that even if waiver concepts operate as to his subsequent statements, the prosecution failed to meet its burden of proof in establishing waiver. As stated many times " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938), quoting from *Aetna Ins. Co.* v. *Kennedy*, 301 U.S. 389, 393 (1937). *Commonwealth* v. *Taylor*, 374 Mass. 426, 436 (1978). *Commonwealth* v. *White*, 374 Mass. 132, 137 (1977), cert. granted, 436 U.S. 925 (1978). Consequently, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* v. *Arizona*, 384 U.S. 436, 475 (1966). See *Commonwealth* v. *Cobb*, 374 Mass. 514, 518 (1978); *Commonwealth* v. *Taylor*, *supra* at 436, and cases cited therein.

The judge, having considered all the circumstances bearing on the issue of waiver in the present case, including the conduct and characteristics of the defendant, concluded that the Commonwealth had sustained its burden. He found that the defendant knowingly and voluntarily waived his Miranda rights, specifically the right to silence and the right to the presence of an attorney. We believe that there was sufficient evidence before the judge to support his subsidiary findings, which in turn are sufficient to support his ultimate holding. Accordingly, we find no error in his denial of the motion to suppress.

2. *Motion to Dismiss.*

The defendant next argues that the judge committed reversible error in failing to dismiss the murder indictment on the ground that the felony-murder rule, as embodied in G. L. c. 265, § 1, is unconstitutional. We have examined the legal arguments raised in support of this claim and find them to be without merit.

General Laws c. 265, § 1, provides in pertinent part: "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree." As developed by the case law, the felony-murder rule in the Commonwealth imposes criminal liability for homicide on all participants in a certain common criminal enterprise if a death occurred in the course of that enterprise. "It is settled law that if two or more combine to commit a robbery and a homicide results, each is criminally responsible for the acts of his associates in the perpetration of the common design for which they conspired; and it is no defence for the associates engaged with others in the commission of a robbery, that they did not intend to take life in its perpetration, or that they forbade their companions to kill." *Commonwealth* v. *Devereaux*, 256 Mass. 387, 392 (1926). As above articulated, the felony-murder rule relaxes the requirement of intent for the crime of murder in certain circumstances. "It was not essential that murder should be a part of the original plan, if it was one of the probable consequences of the robbery by the defendants, armed, as they were, with deadly weapons." *Id.* at 395.

In arguing the unconstitutionality of the felony-murder rule, the defendant takes issue with this relaxation of the requirement of intent. In doing so, however, he claims that the felony-murder rule operates to "relieve" the State of its burden of proof on an essential element of the crime of murder, namely malice aforethought. The defendant claims that the felony-murder rule is, in this regard, unconstitutionally violative of the due process requirements of the Fourteenth Amendment to the United States Constitution. We disagree. As previously stated by this court, "The felony-murder rule as it was formulated in England was a doctrine of constructive malice. To make out a case of murder it was necessary only to establish that the defendant

had committed a homicide while engaged in the commission of a felony. No other evidence had to be introduced to prove the essential element of malice aforethought. . . . This was the only function which the rule performed; it obviated the necessity of establishing malice aforethought by other means" (citations omitted). *Commonwealth* v. *Balliro*, 349 Mass. 505, 512 (1965). Under the theory of felony-murder the Commonwealth is still charged with proving the element of malice aforethought essential to the felony associated with the homicide. Once established, the malice aforethought accompanying the robbery or rape or other felony "punishable with death or imprisonment for life," G. L. c. 265, § 1, is "constructively" applied to the homicide.

The defendant's arguments alleging the unconstitutionality of such application are unpersuasive. The Commonwealth is not, pursuant to the operation of the felony-murder rule, "relieved" of its duty prescribed by the United States Supreme Court in *In re Winship*, 397 U.S. 358 (1970), of proving every fact necessary to the crime as charged beyond a reasonable doubt. Nor is the burden of proof as to an element of the crime charged "affirmatively shifted" from the Commonwealth to the defendant as prohibited by the Supreme Court in *Mullaney* v. *Wilbur*, 421 U.S. 684, 701 (1975).

We have examined the defendant's additional arguments that the felony-murder rule is violative of arts. 1, 10, 12, and 26 of the Declaration of Rights of the Massachusetts Constitution, because the imposition of a mandatory life sentence on conviction of felony-murder, without right to release on parole, cannot be justified as necessary to serve a compelling State interest, and that the rule violates the Eighth Amendment to the United States Constitution because it imposes an "infrequent and arbitrary" punishment. We think these arguments, seemingly based in large part on the decision in *Commonwealth* v. *O'Neal*, 367 Mass. 440 (1975), and *Commonwealth* v. *O'Neal*, 369 Mass. 242 (1975), are without substance. Consequently, we hold that

the judge's denial of the motion to dismiss the murder indictment was free of error.

3. *Motions for Compulsory Process and Continuance.*

The defendant argues that the judge committed error by denying the defendant's motions for (a) compulsory process, and (b) a continuance to secure the attendance of Theodore Watkins as a witness at trial. In ruling on the defendant's motions the judge found that the witness was unavailable in that he was under arrest in another State and was currently resisting extradition or refusing to return voluntarily to the Commonwealth. However, the judge found that the testimony the defense could reasonably expect to obtain from Watkins was available through other witnesses, and, furthermore, that the evidence, even if proffered by Watkins, would not be exculpatory as to the defendant. In denying the defendant's motions, the judge apparently concluded that Watkins was not a "material" witness within the meaning of G. L. c. 233, § 13B, or, if "material," that his testimony would not be of such import to the defendant's case as to warrant the court's compelling his attendance at trial or discontinuing the proceedings until his attendance could be secured.

(a) The judge's rulings in this matter involved an element of discretion and did not violate the defendant's constitutional rights. Although a defendant is "entitled to compulsory process under G. L. c. 277, § 66, for all 'witnesses who are necessary to his defence,' this right does not automatically extend beyond the territory of the Commonwealth. The provisions of the uniform law to secure the attendance of witnesses from without a State in criminal proceedings [G. L. c. 233, §§ 13A-13D] . . . [do] not alter this result." *Commonwealth* v. *Dirring*, 354 Mass. 523, 529 (1968). See *People* v. *Cavanaugh*, 69 Cal. 2d 262, 265-266 (1968), cert. denied, 395 U.S. 981, rehearing denied, 396 U.S. 870 (1969); *People* v. *McCartney*, 38 N.Y.2d 618, 621-623 (1976). Section 13B of G. L. c. 233 provides in pertinent part: "If a person in any state which by its laws has made provision for commanding persons within its borders

to attend and testify in criminal proceedings pending, or grand jury investigations and proceedings commenced or about to commence, in this commonwealth is a *material* witness in a criminal proceeding pending in a court of record of this commonwealth . . . a justice or special justice of such court *may* issue a certificate under the seal of the court, stating such facts and specifying the number of days the witness will be required, which certificate may be presented in accordance with the laws of such other state to a magistrate or officer thereof for appropriate action to secure the attendance of such witness in this commonwealth" (emphasis supplied). We have interpreted the above language, and in particular the word "may," to vest a certain amount of discretion in the trial judge. *Commonwealth* v. *Dirring, supra* at 530. The denial of the defendant's motions here reveals no abuse of that discretion.

Moreover, we think that the defendant's reliance on *Washington* v. *Texas*, 388 U.S. 14, 23 (1967), in arguing that his constitutional rights to compulsory process were violated, is misplaced. In that case the Court held that because the Sixth Amendment right to compulsory process is applicable to States through the Fourteenth Amendment to State proceedings, *id*. at 17-19, a State statute "disqualifying" an alleged accomplice from testifying on behalf of a defendant was unconstitutional. *Id*. at 23. It was undisputed in that case that the alleged accomplice's testimony would not only have been relevant and material, but indeed vital to the defense. *Id*. at 16. In those circumstances it was held that the statutory bar to the introduction of the accomplice's testimony at trial violated the defendant's Sixth Amendment protections. That is not the situation before us.

In addition, where the expected testimony of an individual is merely cumulative of other available testimony to the same effect, as the judge found to be the case here, the denial of process to obtain or compel the attendance of that individual involves an element of discretion on the part of the trial judge, and it is not in all cases a violation of the defendant's constitutional rights. See *Commonwealth* v.

*Funderberg*, 374 Mass. 577, 580-581 (1978). See also *Calley* v. *Callaway*, 519 F.2d 184, 219 (5th Cir. 1975), and cases cited, cert. denied sub nom. *Calley* v. *Hoffman*, 425 U.S. 911 (1976).

(b) Whether a motion for continuance should be granted also lies within the discretion of the judge, whose action will not be disturbed unless there is a clear abuse of discretion. *Commonwealth* v. *Funderberg, supra* at 580. *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-51 (1976). *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276 (1973). *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517-518 (1972). For the same reasons discussed above concerning the judge's denial of the motion for compulsory process, there was no abuse of discretion in denying the motion for continuance.

4. *Motion for Mistrial.*

The defendant argues that the judge committed error by denying the defendant's motion for a mistrial based on the testimony of Nelson's uncle, Starling. On direct examination, Starling testified that approximately two and one-half to three weeks before the shooting of Keen he had seen a .38 caliber handgun in the defendant's possession. The prosecutor asked Starling if he had talked with the defendant "about any laws in Massachusetts." The judge allowed the witness to answer the question and Starling answered in the affirmative. However, the judge excluded the prosecutor's further questions as to what particular law or laws were discussed. The defendant argues (a) that despite those exclusions the prosecutor had permitted Starling to testify that the defendant was in unlawful possession of a handgun, a crime for which he had not been indicted, and (b) that such an imputation of a prior crime was highly prejudicial and improper, and constituted a ground for the declaration of a mistrial.

While this court has frequently stated that evidence of other crimes and prior misconduct of which the defendant might be guilty ordinarily may not be received, *Commonwealth* v. *Clifford*, 374 Mass. 293, 298 (1978), and authorities cited therein, we disagree with the defendant's

claim that the evidence in question here constituted a "plain" implication that the defendant had committed a prior crime. The judge excluded all questions asked by the prosecutor as to the substance of any conversation about "laws in Massachusetts," and it would be pure speculation to infer that the jury had nevertheless regarded the evidence of the defendant's possession of the handgun as indicating he had previously violated the laws of the Commonwealth.

Rather, the evidence of the defendant's possession of a .38 caliber handgun two and one-half to three weeks before the shooting of Keen was admissible to show that the defendant possessed the means to commit the crime. *Commonwealth* v. *Russell*, 2 Mass. App. Ct. 293, 295 (1974). See *Commonwealth* v. *Choate*, 105 Mass. 451, 457-459 (1870). With regard to the two and one-half to three-week time interval, "[p]roximity to the crime in point of time is an element to be considered in viewing the probative value of testimony, and it is a factor which should be left largely to the discretion of the judge. *Aldrich* v. *Aldrich*, 215 Mass. 164, 168 (1913)." *Commonwealth* v. *Russell, supra*. Evidence of a defendant's possession of a weapon or other means to commit the crime charged against him has been held admissible in the following cases involving varying periods of time before and after the alleged crimes: In *Commonwealth* v. *Roach*, 108 Mass. 289 (1871), the time was several hours before the crime, in *Commonwealth* v. *Choate, supra* at 457, it was nearly one month before the crime, and in *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229 (1967), it was approximately twelve months after the crime.

Starling's observation that the defendant had in his possession a .38 caliber handgun, although on cross-examination shown to be somewhat questionable in that Starling admitted he did not know "much about guns" and was "[j]ust guessing" as to the gun's caliber, could nevertheless have been deemed relevant by the judge in connecting the defendant, as well as the gun, to the homicide. See *Commonwealth* v. *Roach, supra*. The judge acted within the proper range of his discretion in admitting the testimony, and his

failure to declare a mistrial based on such evidence was not error.

5. *Motion to Excuse the Jury for the Evening.*

Finally, the defendant argues that the judge's denial of the motion to excuse the jury from further deliberations for the evening after the jury had submitted a question to the judge at a very late hour constituted error. The transcript indicates that final arguments and the judge's charge commenced shortly after 10 A.M. on Monday, November 22, 1976. The jurors began their deliberations at 2:20 P.M. At 9:40 P.M. the jury sent a question to the judge. After discussion between the judge and counsel regarding the substance of the question, counsel for the defendant made his initial request that the jury be excused for the evening. The judge denied the request. After further discussion of the question submitted by the jury, the defendant, at 10:45 P.M., renewed the motion to excuse the jury for the evening, and the judge again denied it. Thereupon, the judge gave the jury supplementary instructions in response to their question. The defendant moved a third time to excuse the jury, and, once again, the judge denied the motion. The jury retired to deliberate further at 11:15 P.M., and returned with their verdicts at 11:35 P.M.

The defendant argues that the judge's failure to excuse the jury created undue pressure for a hasty and compromise verdict. We find no merit to this contention and think it is based on unsubstantiated speculation. In reviewing the record, "[i]t does not appear that the jury were unable or unwilling to give full and careful consideration to the evidence." *Commonwealth* v. *Mabey*, 299 Mass. 96, 100 (1937). The decision when to excuse a jury for the evening rests in the sound discretion of the judge, and there was no abuse of that discretion in this case.

6. *Review under G. L. c. 278, § 33E.*

We have considered the whole case on the law and the evidence, and we conclude that the verdict was neither against the law nor the evidence. The interests of justice require neither a new trial nor the entry of a verdict of a lesser degree of guilt than was found by the jury.

*Judgments affirmed.*