COMMONWEALTH *vs.* WAYNE P. SAYA. November 22, 1983. *Evidence,* Admissions and confessions. *Practice, Criminal,* Conduct of prosecutor.

The defendant appeals from his conviction of breaking and entering a dwelling house in the nighttime with intent to commit a felony.[1] The defendant principally alleges error in the denial of a pretrial motion to suppress and prejudicial prosecutorial misconduct during the trial. We affirm.

1. *The motion to suppress.* "In reviewing the judge's findings of fact and rulings of law on the motion to suppress, we accept the judge's resolution of the conflicting testimony, and will not disturb his subsidiary findings if they are warranted by the evidence." *Commonwealth* v. *Watkins,* 375 Mass. 472, 476 (1978). We summarize the judge's findings of fact, which are amply supported by the evidence. Quincy police Officer Rogers and F.B.I. Agent Clark went to the defendant's place of employment on March 16, 1979, and met with him for about two and one-half hours in a small office. Rogers showed the defendant a warrant for his arrest on an indictment for a burglary in Medway, and told him that the officers were interested in obtaining information about "Social Register" burglaries in

---

[1] A conviction of larceny of personal property with a value of more than $100 was filed with the defendant's consent. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 370 n.1 (1978).

Massachusetts. The defendant expressed concern about the effects of an arrest on his employment and parole status; he was told that if he cooperated he would not be arrested. The defendant was questioned, indicated he would cooperate, but made no incriminating statement about the offense which is the subject of this case (the Claflin burglary). At the defendant's suggestion another meeting was set for March 19, 1979, at a Howard Johnson's in Framingham. Later on March 16, the defendant telephoned Rogers and requested a meeting with him that night. The two met at a lounge, and the defendant gave Rogers two items the defendant said had been stolen in other burglaries, and a battery used in bypassing alarm systems, a task as to which the defendant professed some expertise. On Sunday, March 18, 1979, the defendant telephoned Clark and requested a meeting with him to discuss the arrest warrant and the defendant's parole status. They met outside a Howard Johnson's restaurant in Cambridge and, while in Clark's car, discussed both subjects; Clark said he had no control over either. A discussion of the Claflin burglary ensued, during which the defendant gave a detailed description of the incident and his involvement in it. Thereafter, with the defendant's agreement, Clark drove the defendant to the scene of the Claflin burglary and its environs, where the defendant pointed out things and places related to the crime. On the evening of March 19, 1979, the defendant met with Rogers and Clark at F.B.I. offices in Boston, a change in location chosen by the defendant for his convenience. There was further discussion of the Claflin burglary; and Clark, with the defendant's permission, took samples of the defendant's hair. The defendant, who was twenty-four years old in March of 1979, is an intelligent young man with a high school education; there was nothing abnormal about his behavior during the meetings of March 16, 18 and 19. No Miranda warnings were given to the defendant during any of those meetings.

The judge concluded that the first interrogation on March 16 was custodial in nature, and thus Miranda warnings should have been given, and that the interrogations of March 18 and 19, during which the defendant incriminated himself with respect to the Claflin burglary, were not. "[W]here the ultimate findings and rulings bear on issues of constitutional dimension, they are open for review. Our appellate function requires that we make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.'" *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), quoting from *Brewer* v. *Williams*, 430 U.S. 387, 403 (1977). See *Commonwealth* v. *Watkins*, *supra* at 476. The defendant does not seem to dispute, and we accept as sound, the judge's conclusion that the interrogations of March 18 and 19 were noncustodial. Both meetings were held at the defendant's request; and the location of the second was changed at his request for his convenience. The defendant was not under restraint in any way. See *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966); *Commonwealth* v. *Haas*, *supra* at

552; *Commonwealth* v. *Best,* 381 Mass. 472, 494 (1980). Since the defendant did not incriminate himself during the first March 16 meeting with respect to the Claflin burglary, the March 18 and 19 statements were not tainted under a "cat-out-of-the-bag" analysis. See *Commonwealth* v. *Watkins, supra* at 480-482. Compare *Commonwealth* v. *Haas, supra* at 554-555. For the same reason, as well as those discussed below, the later statements were not inadmissible as "fruit of the poisonous tree." See *Commonwealth* v. *Watkins, supra* at 483 n.9. The defendant argues, however, that his incriminating statements of March 18 and 19 were improperly induced or coerced by the revelation on March 16 of the existence of an arrest warrant for another burglary, and the promise not to execute that warrant on that day if the defendant cooperated with the police. See *Commonwealth* v. *Mahnke,* 368 Mass. 662, 679-680 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth* v. *Meehan,* 377 Mass. 552, 564 (1979). The judge found that the defendant's statements on March 18 and 19 (and, by implication, the hair samples) were "voluntarily, knowingly and intelligently" given. We think, in light of the totality of the circumstances (see *Commonwealth* v. *Mahnke, supra* at 680), that these conclusions are sound. On the night of March 16 the defendant requested a meeting with Rogers, turned over two items taken in previous burglaries, discussed his prowess in bypassing alarm systems, and handed over a battery used in such operations. The defendant requested the meeting on March 18 and suggested a change in location, for his convenience, of the meeting of March 19. No improper representation was made to the defendant at those meetings. Indeed, when the subjects of the arrest warrant and parole status were discussed on March 18, Clark expressly disclaimed any control over them; only then did the defendant begin to make incriminating statements about his involvement in the Claflin burglary. No promise or threat was ever made to the defendant with respect to prosecution for the Claflin burglary. Contrast *Commonwealth* v. *Meehan, supra* at 564-565. There was no error in the denial of the motion to suppress.

2. *Prosecutorial misconduct.* The defendant argues that the prosecutor broke a promise which she made to the motion judge by introducing at trial statements made by the defendant at the first meeting on March 16. See *Commonwealth* v. *Harris,* 364 Mass. 236, 238 (1973). The defendant does not challenge the trial judge's ruling on his objections to the evidence offered; and prosecutorial misconduct was not the basis of objection. We look then to determine whether there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Boiselle,* 16 Mass. App. Ct. 393, 399 (1983), and cases cited. The prosecutor indicated to the motion judge that she would not offer the defendant's statements of March 16 "substantively" at trial. Prior to trial she indicated to the trial judge that she intended to use the statements only as they were relevant to the issue of the voluntariness of the later incriminating statements of the defendant. The prosecutor asked for, received and followed the judge's guidance in mak-

ing reference to the March 16 statements in the opening and in the examination of Rogers and Clark. The trial judge had read the findings and rulings of the motion judge. The prosecutor did not question the witnesses concerning the content of the March 16 statements until defense counsel explored the subject.

As has been said above, the defendant did not incriminate himself on March 16 with respect to the Claflin burglary. While the jury knew that the officers had an arrest warrant for the defendant, they were not informed that the defendant had been indicted and that the warrant was on account of the Medway burglary. Immediately after testimony of Rogers that the defendant, on March 16, admitted involvement or participation in burglaries other than the Claflin burglary, the judge forcefully instructed the jury that the defendant was on trial only for the Claflin burglary, that "participation" and "involvement" may include noncriminal activity, and that the jury should "keep your eye on the ball."

We conclude that there is no substantial risk of a miscarriage of justice.

3. *Delay in executing the arrest warrant.* The defendant argues that his due process rights were violated by the delay in the service of the arrest warrant for the Medway burglary. The argument is without merit in this case, which involves only the Claflin burglary.[2]

*Judgment affirmed.*

*Barry P. Wilson* for the defendant.
*Margot Botsford,* Assistant District Attorney, for the Commonwealth.

---

[2] See *Commonwealth* v. *Saya,* 14 Mass. App. Ct. 509 (1982), where the defendant's conviction as an accessory before the fact to the Medway burglary was affirmed, and this issue apparently was not raised.