**Larry WATKINS, Petitioner, Appellant,**

v.

**William F. CALLAHAN, Respondent, Appellee.**

**No. 83–1380.**

United States Court of Appeals, First Circuit.

Argued Oct. 3, 1983.

Decided Jan. 13, 1984.

John P. Osler, Boston, Mass., for petitioner, appellant.

Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Division, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, GIBSON *  and TIMBERS **, Senior Circuit Judges.

TIMBERS, Circuit Judge.

Larry Watkins, a Massachusetts state prisoner who is serving a mandatory term of life imprisonment following his conviction by a jury on November 22, 1976 of first degree murder, armed robbery and kidnapping, appeals from a judgment entered May 3, 1983 in the District of Massachusetts dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). We affirm.

I.

On November 17, 1975, in Boston, Watkins [1] and a female companion, Theresa Nelson, hailed a green Buick driven by Edward Keen. After the three had driven around for a short time, Watkins pulled out a gun and pointed it at Keen. Nelson took Keen's wallet. Watkins forced Keen to get into the trunk of the car. Watkins and Nelson drove to a place where they picked up Watkins' brother, Theodore. The three drove around for a while and then stopped. Watkins and Theodore got out of the car. Watkins opened the trunk. Theodore, using Watkins' gun, shot and killed Keen. After Watkins and Nelson dropped Theodore at his house, they went to Nelson's house, packed her belongings and left for Kentucky in the green Buick.

* Of the Eighth Circuit, by designation.

** Of the Second Circuit, by designation.

1.  When we say "Watkins", we refer to appellant Watkins as distinguished from his brother, Theodore Watkins, to whom we refer as "Theodore".

On November 18, Keen's body was found in Newton, Massachusetts. The police sent an all points bulletin in an effort to locate Keen's car. On November 21, police in Louisville, Kentucky, found Watkins and Nelson seated in a green Buick. The pair was recognized as persons wanted for Louisville armed robberies. After a high speed chase, Watkins and Nelson were arrested. A search of the trunk of the car revealed blood stains and other evidence of a killing. An investigation disclosed that the car belonged to Keen, the victim of the Massachusetts homicide.

On the same day, November 21, Louisville Police Detective Terry Clark spoke with Watkins at about 2:00 P.M. Clark advised Watkins of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). After Watkins stated that he understood his rights, he told Clark about the events surrounding his arrest. At about 6:00 P.M. the same day, Clark interviewed Watkins a second time. Clark again advised him of his rights. Watkins again stated that he understood his rights. Clark informed Watkins that he was a suspect in the Massachusetts homicide. Watkins made certain statements to Clark.[2] At no time during either discussion with Clark did Watkins state that he had an attorney, nor did he request one.

On the following day, November 22, Massachusetts State Police Detective William Nally and Newton Police Detective James Cox arrived in Louisville. They questioned Nelson who implicated Watkins in the Massachusetts homicide. At about 2:00 P.M., Nally and Cox interviewed Watkins. After they advised him of his *Miranda* rights, Watkins stated that he understood his rights and indicated that he was going to talk to an attorney. Nally, however, questioned Watkins regarding whether he wanted to consult with an attorney before he discussed anything or whether he wanted to talk about what he had told Clark the previous day. In response to Nally's questions, Watkins told him about the chase and arrest in Louisville. Watkins also admitted being in Boston with Nelson. Watkins again said that he would like to talk to an attorney.

At that point Nally took Watkins to the main office of the Louisville police station and allowed him to use a telephone. Watkins did not call an attorney. Rather, he called his mother and sister and spoke to them for approximately thirty minutes. After that phone call, Watkins indicated to Nally that he wanted to give a further statement. The questioning resumed. Watkins gave inculpatory details concerning the shooting of Keen.

After a pre-trial hearing in the Massachusetts Superior Court for Middlesex County on Watkins' motion to suppress his statements, the trial judge denied the motion in its entirety. During the trial, however, the judge decided to rehear the suppression motion. After the rehearing, the judge ruled that the Massachusetts police should have ceased all questioning when Watkins first stated that he was going to talk to an attorney. The judge suppressed all statements made by Watkins after his first mention of an attorney and prior to his telephone call to his mother and sister. The judge ruled, however, that those statements made by Watkins after he had been allowed to call an attorney—even though he chose instead to call his mother and sister—(hereinafter "the post-telephone call statements") were admissible because there had been compliance with the requirements of *Miranda* and *Michigan v. Mosley,* 423 U.S. 96 (1975).

On November 22, 1976, Watkins was convicted by a jury of the crimes stated above. The judgment was affirmed in a full opinion by the Supreme Judicial Court of Massachusetts. *Commonwealth v. Watkins,* 375 Mass. 472, 379 N.E.2d 1040 (1978).

On November 23, 1981, Watkins filed the instant habeas petition in the District of Massachusetts. The petition was referred to a United States Magistrate. In two sep-

---

**2.** These statements were not the subject of the suppression motion and are not before us on appeal.

arate reports, the Magistrate recommended that an evidentiary hearing not be held and that the petition be dismissed. The court overruled Watkins' objections to the Magistrate's reports, accepted his recommendations and dismissed the petition on May 3, 1983. A certificate of probable cause having been entered by the district court, this appeal followed.

## II.

■ Before reaching the merits, we shall rule upon the Commonwealth's claim that Watkins has not exhausted his state remedies. The Commonwealth claims that Watkins argued in the *state* courts that his post-telephone call statements should have been suppressed because *Miranda* established a per se rule against all interrogation once the suspect requested an attorney, whereas now he argues in the *federal* courts, as a result of *Edwards v. Arizona*, 451 U.S. 477 (1981), that an evidentiary hearing should have been held to determine who initiated the post-telephone call conversation. The latter claim was not asserted in the state courts.

In a case involving similar circumstances, the Seventh Circuit held that there had been compliance with the exhaustion requirement. Backing up for a moment, in *White v. Finkbeiner*, 611 F.2d 186 (7th Cir. 1979) ("*White II*"), that court had affirmed the district court's denial of a habeas petition,[3] holding that, although White had requested counsel, he later validly had waived his right to counsel. The Supreme Court remanded for reconsideration in the light of *Edwards*. *White v. Finkbeiner*, 451 U.S. 1013 (1981). On remand, in *White v. Finkbeiner*, 687 F.2d 885 (7th Cir.1982) ("*White III*"), *petition for cert. filed*, 51 U.S.L.W. 3001 (U.S. June 18, 1982) (No. 81–2340), the Seventh Circuit reversed the district court judgment and remanded with instructions to issue the writ and order release of the prisoner unless a new trial was held. Of

particular relevance to the instant appeal, the Seventh Circuit specifically held that White had fully utilized his opportunity to litigate his *Miranda* claim in the state courts. Thus, as required by 28 U.S.C. § 2254(b) (1976), the court held that White had exhausted his available state remedies. *White III, supra,* 687 F.2d at 886 n. 5.

We agree with the Seventh Circuit's ruling on the exhaustion issue in *White III*. When Watkins argued in the state courts that his post-telephone call statements were admitted in violation of *Miranda,* he presented the "substance" of his present federal habeas corpus claim. *Picard v. Connor,* 404 U.S. 270, 278 (1971).

We hold that Watkins has exhausted his state remedies.

## III.

Turning to the merits, Watkins raises four issues for review: (A) the refusal of the district court to hold an evidentiary hearing on the admissibility of the post-telephone call statements; (B) Watkins' waiver of his previously "asserted" right to counsel; (C) the constitutionality of the Massachusetts felony murder theory; and (D) the refusal of the state trial court to grant a continuance to obtain the testimony of a witness. We shall deal with these issues seriatim.

### (A)

The Supreme Court's landmark *Miranda* decision has been refined and interpreted in many contexts. In one such refinement, *Edwards v. Arizona,* 451 U.S. 477 (1981), the Court held with respect to interrogation of a suspect after he has requested counsel:

"We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been

---

**3.** In *White v. Finkbeiner,* 570 F.2d 194 (7th Cir.1978) ("*White I*"), the court had remanded the case to the district court for an evidentiary hearing. On remand, the district court again denied the habeas petition because White had

not requested that counsel be present during a custodial interrogation. *White II* was an appeal from this second denial of the habeas petition.

made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" (emphasis added).

451 U.S. at 484–85.

Watkins argues that it was error for the district court to refuse to hold an evidentiary hearing because, according to Watkins, the state courts had failed to resolve the merits of the factual dispute as to who initiated the post-telephone call conversation.

A federal evidentiary hearing as to who initiated this conversation need not be held if, after a full hearing, the state court trier of the facts reliably has found the relevant facts, *Townsend v. Sain,* 372 U.S. 293, 313 (1963), or if the district court can reconstruct the "findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia." *Id.* at 314.

Here the state trial court found, "He [Watkins] called and spoke to his mother and sister and then indicated he was ready to make a statement to the officers."

This was confirmed by the Supreme Judicial Court of Massachusetts on its direct review of Watkins' conviction:

"The judge correctly suppressed all statements made by the defendant between his first and second requests for counsel. However, after the second request, the interrogation was stopped and the defendant was given the opportunity to call an attorney. *The detectives did not resume interrogation of the defendant before he indicated to them that he wanted to give the further statement. They did*

not *solicit him or apply any coercion or pressure on him.* We hold that in these circumstances the defendant's *spontaneous* declaration of his desire to make a further statement constituted an implied, if not express, waiver of his previously asserted desire to speak with counsel. . . ." (emphasis added).

*Commonwealth v. Watkins, supra,* 375 Mass. at 484–85, 379 N.E.2d at 1048.

■ The district court in turn held that the state trial court impliedly had found that there were no intervening comments by the officers before Watkins' spontaneous declaration of his desire to make a further statement. Under these circumstances, there has been compliance with the *Townsend* requirement of a reliable state court finding of the relevant facts.

■ We hold, under *Edwards,* that the post-telephone call statements were admissible.[4]

### (B)

Watkins also argues that, even if he initiated the post-telephone call conversation, he did not waive his previously invoked right to counsel. He contends that the improper conduct of Officer Nally led him to understand that Nally eventually would obtain the statement that he wanted from him, despite the *Miranda* warnings that Nally had given him.

The state trial court held that the evidence was sufficient to warrant the conclusion that Watkins understood his rights and voluntarily had waived them. This was confirmed by the Supreme Judicial Court of

**4.** The Supreme Court apparently has before it the issue of whether *Edwards* should be applied retroactively. *Stumes v. Solem,* 671 F.2d 1150 (8th Cir.1982), *cert. granted,* 51 U.S.L.W. 3938 (U.S. June 6, 1983) (No. 81–2149). Our disposition of the instant case would not be affected by the Supreme Court's determination of the retroactivity of *Edwards.* In *Edwards,* the police, not the accused, initiated the interrogation after the accused had requested counsel. However, the Court clearly stated that an accused was not powerless to countermand an election to talk to counsel. 451 U.S. at 485. If an accused initiates the conversation

"[T]he question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Id.* at 486 n. 9. In the instant case, this inquiry was made and the waiver was found to be valid. See section (III)(B) of this opinion.

Massachusetts. *Commonwealth v. Watkins, supra,* 375 Mass. at 484–85, 379 N.E.2d at 1048.

Based on our independent examination of the record, we hold that the Commonwealth sustained its burden of demonstrating Watkins' knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. *Miranda, supra,* 384 U.S. at 475.

### (C)

■ Watkins further argues that the Massachusetts theory of felony murder upon which his conviction is based, is unconstitutional because it relieves the Commonwealth of the burden of proving an element of murder, namely malice aforethought, by operation of a conclusive presumption.

We have held that the Maine felony murder statute, which contains a similar malice aforethought provision, is constitutional. *Westberry v. Murphy,* 535 F.2d 1333 (1st Cir.), *cert. denied,* 429 U.S. 889 (1976). There we held that a state court is "free to hold that the intentional commission of a felony causing death falls within the statutory definition of 'malice aforethought'". *Id.* at 1334.

Watkins attempts to distinguish *Westberry,* arguing that there we were dealing with a substantive definition of malice aforethought, whereas here there is involved a conclusive presumption of the life-endangering state of mind essential to the crime of murder. We reject Watkins' attempted distinction as untenable.

The malice aforethought requirement of the Massachusetts statute[5] was satisfied here by the Commonwealth's proof of the element of intent involved in the underlying felony. *Commonwealth v. Balliro,* 349 Mass. 505, 512, 209 N.E.2d 308, 312 (1965).[6] The felony murder theory imposed criminal liability on Watkins as a participant in the criminal enterprise because a death occurred in the course of that enterprise. *Commonwealth v. Heinlein,* 256 Mass. 387, 392, 152 N.E. 380, 383 (1926).

We hold that the Massachusetts theory of felony murder is constitutional as here applied.

### (D)

Finally, Watkins argues that his Sixth Amendment right to call witnesses was violated when the trial court refused to grant a continuance to obtain the testimony of Theodore Watkins who also had been charged with the murder of Keen. On October 29, 1976, Theodore surrendered in Dayton, Ohio. On November 4, he appeared in an Ohio court and declined to waive his right to challenge extradition. On November 8, Theodore was indicted for murder in Massachusetts.[7] As late as November 12, the date on which the trial of the instant case began, Theodore had indicated that he did not intend to waive extradition.

Watkins implies that the trial judge refused his request for a continuance because he had not sustained his burden of proving that Theodore would not invoke his Fifth Amendment privilege and refuse to testify. Watkins argues that this violated his Sixth Amendment right to call witnesses.

The record, however, makes it clear that the trial judge denied the request for a continuance on the grounds stated by the Magistrate below. First, at the time of the

---

**5.** "Murder committed with deliberately premeditated malice aforethought . . . is murder in the first degree. . . ." Mass.Gen.Laws Ann. c. 265, § 1 (1970).

**6.** Watkins cites cases where Massachusetts has required an instruction on "conscious disregard of risk to human life" for homicides committed in the course of underlying felonies which are not inherently dangerous. *E.g., Commonwealth v. Matchett,* 386 Mass. 492, 436 N.E.2d 400 (1982) (extortion). This is not proof, as Watkins suggests, that conscious disregard of risk to human life is always an element of murder in Massachusetts. Rather, these cases indicate when the felony murder theory does *not* apply.

**7.** Theodore later was convicted of first degree murder and kidnapping based on the events of November 17, 1975 which are the subject of the instant case. *Commonwealth v. Theodore Watkins,* 377 Mass. 385, 385 N.E.2d 1387 (1979).

motion for a continuance, Theodore was unavailable and had expressed his intention of remaining so. It was anticipated that it would require ninety days to extradite him to Massachusetts. In denying the continuance, the trial judge agreed to take steps to assist in making Theodore available. On November 12, after Theodore again indicated that he did not intend to waive extradition, the judge stated that, despite the denial of the continuance, if Theodore subsequently indicated that he would return to Massachusetts, the judge would entertain an application for a reasonable delay in the trial to enable him to testify. Second, even if Theodore were available, presumably he would invoke his Fifth Amendment privilege not to testify. Third, Theodore's testimony at best would be cumulative of that of Nelson, the third participant in the crime. And, finally, it appeared that Theodore's testimony would not necessarily exculpate Watkins in view of the scope of criminal liability under the Commonwealth's felony murder and joint enterprise doctrines.

■ A trial judge has wide discretion to determine the admissibility of evidence at trial because the "Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system...." *United States v. Nobles,* 422 U.S. 225, 241 (1975). In *Nobles,* the Supreme Court held that the trial court properly exercised its discretion when it held that an investigator could not testify about his interviews with prosecution witnesses because defense counsel refused to make available to the prosecution a copy of the investigation report.

■ In the instant case, we believe that the trial court properly exercised its discretion in declining to delay the trial for three months to await a witness who in all likelihood would refuse to testify. Further, the trial court justifiably found that Theodore's testimony at best would be merely cumulative and probably would not exculpate Watkins. The absence of such a witness does not give rise to a violation of a defendant's constitutional rights. *United States v.*

*Rose,* 669 F.2d 23, 27–28 (1st Cir.), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

We hold that the denial of a continuance to obtain Theodore's testimony did not violate Watkins' Sixth Amendment right to call witnesses.

Based on our careful examination of the entire record, we find no merit in any of appellant's claims.

*Affirmed.*