COMMONWEALTH *vs.* EDWARD J. SILVA.
(and seven companion cases[1]).

Essex.    November 1, 1976. — February 4, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Insanity. Practice, Criminal,* Defendant's competency, Judicial discretion, Examination of jurors, Charge to jury. *Jury and Jurors. Identification.*

In the absence of any factual predicate for a defendant's possible defense of insanity, a judge did not abuse his discretion in denying the defendant's motion to hire medical experts at Commonwealth expense or in his failure to order a psychiatric examination on his own motion under G. L. c. 123, § 15 (*a*). [820-821]

A judge at a criminal trial did not err in refusing to read the names of prosecution witnesses and to ask prospective jurors whether they knew any of them nor did he err in refusing to dismiss the entire panel as a result of discussions among the veniremen "that it was a murder case." [821-822]

At a criminal trial, a judge did not abuse his discretion in refusing to allow a late motion to suppress identifications of the defendant and to hold a voir dire during the trial, nor did he err in refusing to give an instruction requested by the defendant as to the dangers in eyewitness identification testimony. [822-824]

INDICTMENTS found and returned in the Superior Court on September 13, 1974.

The cases were tried before *Donahue,* J.

*Martin K. Leppo* for Edward J. Silva.

*Daniel F. Featherston, Jr.,* for James J. Griffin.

*Michael T. Stella, Jr.,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.    Each of the two defendants appeals from convictions of murder in the first degree, assault with a dangerous weapon with intent to commit murder, and attempted armed robbery. G. L. c. 278, §§ 33A-33G. There is

[1] Four of the companion cases are against James J. Griffin.

a total of thirteen assignments of error, including denial of the defendant Silva's motion for appointment of medical experts "regarding his possible defense of insanity." We affirm the convictions.

We summarize the evidence on behalf of the Commonwealth; no evidence was offered by the defendants. About 3 P.M. on July 26, 1974, the defendants Silva and Griffin, both armed with guns, attempted a robbery at a supermarket in Lynn. Griffin went into the office area of the store, announced a "stickup," and became engaged in a struggle with Chouinard, an assistant manager. Falkowski, another assistant manager, tried to help and was shot three times by Silva, who then shot and killed Chouinard. The robbers left in a stolen yellow Mustang automobile, and Silva shot Broughton, a customer who was trying to get the registration number. On a side street nearby, Griffin, the driver of the Mustang, ran to a parked blue Toronado automobile and drove it away.

We discuss the main points argued by the defendants in the order in which they were raised in the Superior Court.

1. *Silva's "possible defense of insanity."* The defendants were indicted in September, 1974. Griffin pleaded not guilty in October, and Silva, in November. In January, 1975, Silva's motion for speedy trial was allowed and trial was scheduled for February 18. There was no psychiatric examination of Silva, no motion for such an examination under G. L. c. 123, § 15 (*a*), as appearing in St. 1971, c. 760, § 12, and no suggestion by anyone that he was not competent to stand trial. On February 7, 1975, he moved for a continuance and for the hiring at Commonwealth expense of medical experts, two psychiatrists and one neurologist, "regarding his possible defense of insanity." After some discussion of the difficulties of scheduling a speedy trial, the motions were denied on that day, but the trial did not in fact begin until March 24. On that day the motion for medical experts was renewed orally, and it was again renewed later in the trial. A new written motion was filed April 15, after the verdicts. Each of the motions was de-

nied. During argument on the motions counsel asserted that he had information that Silva had "had a tumor in his head as a result of childhood accident," that he was injured in prison "being hit with a pipe," and that he "for years had had these psychiatric problems." Both defendants assign error in the denial of Silva's motions.

We have no doubt that on a proper showing a judge may in his discretion authorize an indigent defendant to expend public funds for psychiatric assistance. Compare *Hintz* v. *Beto,* 379 F.2d 937, 941 (5th Cir. 1967), and *Jacobs* v. *United States,* 350 F.2d 571, 573 (4th Cir. 1965), with *United States ex rel. Smith* v. *Baldi,* 344 U.S. 561, 568 (1953). But no issue was fairly raised as to competence to stand trial. See *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971), and cases cited. And we think in the circumstances the judge could properly require a factual predicate for Silva's "possible defense of insanity" beyond unsworn statements of counsel in argument. Cf. *Commonwealth* v. *Hubbard, ante,* 160, 172-173 (1976).

A more difficult question is whether there was an abuse of discretion in the judge's failure to order a psychiatric examination on his own motion under G. L. c. 123, § 15 (*a*). The facts and circumstances of the crimes charged no doubt made a successful defense of insanity seem in the last degree improbable. Cf. *Commonwealth* v. *Kostka,* 370 Mass. 516, 538 (1976); *Commonwealth* v. *Masskow,* 362 Mass. 662, 671 (1972). Even so, we think it would have been better practice to order a psychiatric examination once a motion was made referring to a possible insanity defense. In the circumstances, however, we believe no abuse of discretion is shown in the absence of any factual predicate in the form of an affidavit, a hospital record, or the like. We do not consider whether Griffin could properly assign error as to Silva's possible defense.

2. *Examination of prospective jurors.* At the outset of the trial the judge spoke to all the prospective jurors, informing them that they had been called to serve as jurors in a murder case. He then asked each juror individually, out of the presence of the others, the questions required by

G. L. c. 234, § 28. He also asked whether the juror knew any of the three victims or any employees of the store. But he refused to read the names of prosecution witnesses to see if the juror knew any of them, and Silva assigns error in that ruling. One juror was asked whether he knew a particular prosecution witness, and on his affirmative answer he was excused for cause. Another juror referred to "little stories upstairs that it was a murder case," and the defendants joined in a motion that the entire panel be dismissed. Denial of that motion is assigned as error by both.

We regard these assignments of error as insubstantial. It was entirely within the judge's discretion whether to allow questions other than those required by statute. *Commonwealth* v. *Wygrzywalski,* 362 Mass. 790, 793 (1973). No abuse of discretion is shown either as to the questioning or as to discussions among the veniremen. *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972).

3. *Identification of Griffin.* The only issues argued to the jury by the defendants related to the testimony identifying them as the robbers; there was no dispute that the crimes took place, although there were discrepancies as to details. Mrs. Trott, bookkeeper of the store, identified both defendants. Silva was also identified by two other store employees and by Broughton. Griffin was identified by Falkowski and by a telephone repairman who saw Griffin change cars. In addition, there was testimony that Griffin's fingerprint was found on the stolen yellow Mustang.

In January, 1975, Silva moved to suppress any identification based on photographs shown to eyewitnesses. A judge allowed the motion to be filed late under Rule 61 of the Superior Court (1974), and referred it to the trial judge. On March 25 and 26, after the jury had been empanelled and a view taken, but before any testimony had been heard by the jury, an extensive voir dire hearing was held, at which the four witnesses testified who later identified Silva before the jury. The judge denied the mo-

tion to suppress on March 26 and later filed findings. No error is assigned or argued by Silva in this regard.

After the voir dire hearing and the prosecution's opening to the jury, counsel for Griffin moved for a voir dire on Mrs. Trott's identification of Griffin, claiming that he had not previously been aware of the grounds for the motion. The judge denied the motion because her voir dire testimony on the Silva motion indicated that "if she is going to make any identification she is going to make an identification from what she saw in the First National Store that day." Thereafter Mrs. Trott testified before the jury and identified Griffin as one of the robbers. On cross-examination by counsel for Griffin, she testified that she had followed the case in the newspapers and had seen some pictures, but that she did not know his name when she identified the pictures, although Griffin's name was in the newspaper. On redirect examination she testified that she had identified a photograph of Griffin before she saw his photographs in the newspaper. Griffin moved for a mistrial on the ground that a photographic identification other than through the newspaper went beyond the scope of his cross-examination. The judge denied the motion, but directed the jury to disregard the question and answer.

Subsequently, Falkowski testified and identified Griffin as one of the robbers. On cross-examination by counsel for Griffin, he testified to describing the robber only as "Spanish" on the day he returned from the hospital, six days after the crimes. About a week later, after he knew the name Griffin from news and radio reports, but before he had seen other pictures, he picked Griffin's photograph out of a group of ten photographs as "possibly" the man. Griffin's name was on the back of the photograph, but he did not see it. The photograph and his view of Griffin as the defendant at a probable cause hearing in August, 1974, helped to confirm his identification of Griffin. Griffin's motion to strike the identification was denied, and his written motion for leave to file late a motion to suppress was filed and denied the same day.

The judge instructed the jury, in examining the testi-

mony of identifying witnesses, to consider the opportunity of the witness to see, his degree of attention, the accuracy of his prior description, and his level of certainty demonstrated at the time of the crimes. The judge refused, however, to give instructions requested by the defendants emphasizing the dangers in eyewitness identification testimony.

There was no error with respect to the identification of Griffin. No abuse of discretion is shown in the refusal to hold a voir dire during the trial or to allow his late motion to suppress identification testimony. Rule 61 of the Superior Court (1974). *Commonwealth* v. *Cooper,* 356 Mass. 74, 78-79 (1969). Cf. *Commonwealth* v. *Moore,* 359 Mass. 509, 512-513 (1971). There was no showing of an unnecessarily suggestive confrontation, and there was every indication that the in-court identification by Mrs. Trott was based on her observations during the commission of the crimes. *Commonwealth* v. *Kostka,* 370 Mass. 516, 523-524 (1976). *Commonwealth* v. *Mobley,* 369 Mass. 892, 895-897 (1976). The weaknesses in Falkowski's identification were fully disclosed to the jury, but he unequivocally testified that it was based on his observations during the crimes, and we think the judge was warranted in leaving the evaluation of his testimony to the jury. *Commonwealth* v. *Wilson,* 360 Mass. 557, 562-563 (1971). The matter of instructions to the jury on eyewitness identification is governed by our decision in *Commonwealth* v. *Nassar,* 354 Mass. 249, 264-265 (1968), cert. denied, 393 U.S. 1039 (1969).

4. *Other issues.* We refer briefly to the defendants' other arguments, which have no merit. As to the claim that a color photograph of the deceased victim was inflammatory, compare *Commonwealth* v. *Bys,* 370 Mass. 350, 360-361 (1976), with *Commonwealth* v. *Richmond, ante,* 563, 565-566 (1976). As to testimony about police photographs, see *Commonwealth* v. *Gerald,* 356 Mass. 386, 388 (1969). As to cross-examination on collateral matters, see *Commonwealth* v. *Sandler,* 368 Mass. 729, 737-738 (1975).

5. *Section 33E.* In accordance with our duty under

G. L. c. 278, § 33E, we have reviewed the entire record, including the transcript and exhibits, and we find no reason to change the ultimate outcome.

*Judgments affirmed.*