COMMONWEALTH *vs.* WAYNE S. HICKS & others[1]
(and two companion cases).

Essex. October 2, 1978. — January 2, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Constitutional Law*, Confrontation of witnesses. *Evidence*, Admissions and confessions, Cross-examination. *Search and Seizure. Practice, Criminal*, Examination of jurors, Voir dire, Instructions to jury. *Identification.*

At a criminal trial involving three defendants, there was no error in admitting statements by one of the defendants where all three defendants testified and were available for cross-examination and where the judge's instructions that certain of the statements were not evidence against the other defendants sufficiently protected their rights. [4-5]

At a criminal trial, the judge did not err in denying a defendant's motion to suppress a piece of paper seized in his trailer in New Hampshire because the search and seizure violated a New Hampshire statute in certain respects where violation of the statute was not a ground for exclusion of evidence under New Hampshire law. [5-6]

The judge in a criminal case did not abuse his discretion in refusing to discharge the entire venire after it was revealed that some jurors may have been exposed to discussion or comment about the case. [6]

---

[1] Joseph Marshall, Jr., and Perley J. Witham.

The judge in a criminal case did not err in denying as untimely a
defendant's motion at trial for a voir dire on a witness's identifica-
tion of him and allowing the transcript of a voir dire held at the
defendant's previous trial and the findings made to be made an
exhibit. [6-7]

Evidence at a criminal trial supported the judge's findings that a
group of photographs, which included a defendant's photograph,
shown to a witness by police were of people of about the same size
and general description and there was no impermissible indication
as to which one was the defendant. [7]

Defendants in a criminal case were not denied the right to reasonable
cross-examination of a Commonwealth witness by the exclusion of
certain questions where the matters sought to be elicited had been
sufficiently aired. [7-8]

Taken as a whole, a judge's charge as to reasonable doubt and circum-
stantial evidence was proper. [8-9]

Taken as a whole, a judge's charge in which he used hypothetical cases
did not unfairly emphasize the Commonwealth's view of the facts.
[9-10]

INDICTMENTS found and returned in the Superior Court
on January 21, 1974.

The cases were tried before *Bennett, J.*

*Steven J. Rappaport* for Wayne S. Hicks.

*Charles F. Dalton, Jr.,* for Joseph Marshall, Jr.

*Harvey Brower* for Perley J. Witham.

*Patrick J. Riley,* Assistant District Attorney (*Michael
T. Stella, Jr.,* Assistant District Attorney, with him), for
the Commonwealth.

BRAUCHER, J. Convicted of murder in the first degree,
robbery, and confining or putting in fear for the purpose
of stealing, the three defendants appeal pursuant to G. L.
c. 278, §§ 33A-33G. In twenty-four days of trial they
claimed 254 exceptions, and they assigned 217 errors but
argued only ten. We treat the assignments of error not
argued as waived. S.J.C. Rule 1:13, as amended, 366 Mass.
853 (1974). *Commonwealth* v. *Horton,* 376 Mass. 380
(1978). We affirm the convictions.

The crimes were committed December 3, 1972. The in-
dictments were returned January 21, 1974. Pretrial mo-
tions were heard April 5, 1974, and trial began April 16,

1974, ending in a mistrial on May 11, 1974. Further pretrial motions were heard October 8, 1974, and verdicts of guilty were returned on November 12, 1974.

We summarize the evidence. The victim, Norman Welch, a florist, died between 7 and 10 P.M. on December 3, 1972, from multiple blows to his head and neck. A neighbor identified the defendant Witham as one of the two men she saw walking down Welch's street about 5:45 P.M. that evening. An attendant at a local gasoline station saw the defendants Hicks and Marshall and another man in Hicks's car about 6:30 P.M. Another neighbor saw three men leave a car and stand by Welch's greenhouse about 6:30 or 7 P.M.

The two principal Commonwealth witnesses were Jean Eaton and Bert Abrahams. Eaton testified that Hicks, Marshall and another man came to her house about 6:30 or 7 P.M., and that Hicks asked her to telephone the victim to get him out of his house. She declined. Abrahams testified that the three defendants came to his house at 7:20 P.M., and that Hicks invited him to join them in robbing the victim. He declined. At 9:45 P.M. Hicks and Witham returned to Abrahams's home; Hicks said they got $15,000, and Witham asked Abrahams to call the police because "the man is tied up and he is hurt pretty bad." The next morning Marshall told Abrahams that the victim came out of his house and that they tried to knock him out, pulled him inside, and tied him up. Hicks later told Eaton he never went inside.

There was evidence that Hicks and Marshall had heard that the victim kept money in his house, and old silver certificates were found there after the murder. Hicks later deposited or exchanged similar certificates; Witham had a large amount of old bills and told a witness the money came from a robbery in Massachusetts; Marshall engaged in large cash transactions soon after the murder. In a search of Marshall's house trailer in November, 1973, police found a piece of paper with the victim's handwriting on it.

The defendants testified in their own behalf and called witnesses to corroborate their alibis. Hicks testified he had gone with Abrahams and another man to rob the victim but backed out when he realized they could not get the victim out of his house. Hicks and Witham said they got the money from Abrahams; Marshall testified to money borrowed by him in August, 1972, and January, 1973, track winnings, and the sale of cars.

We indicate which defendants argue each of the ten issues.

1. *Motions to sever* (Marshall, Witham). Both before and at trial Marshall and Witham moved for separate trials, relying principally on *Bruton* v. *United States*, 391 U.S. 123 (1968). They point to three out-of-court statements attributed to Hicks, and claim that those statements incriminated them: (1) Hicks's request to Eaton to call the victim to get him out of his house; (2) Hicks's statement to Eaton that he had never gone "inside the place"; (3) Hicks's statement to Abrahams that "they got about fifteen thousand dollars." At first the judge instructed the jury to limit their consideration of these statements to the case against Hicks. Later he instructed the jury that, if they found the defendants to have been engaged in a common criminal enterprise, statements of one defendant during the time and in furtherance of the common enterprise could be considered against all, but that the common enterprise, if any, terminated when they left the victim's premises. The first of Hicks's statements to Eaton was admissible against all defendants on this basis. *Commonwealth* v. *French*, 357 Mass. 356, 380 (1970), judgments vacated as to death penalty sub nom. *Limone* v. *Massachusetts*, 408 U.S. 936 (1972), and cases cited.

The *Bruton* case held that it was a denial of the defendant's constitutional right of confrontation to admit a codefendant's confession inculpating him, when the codefendant did not take the stand and expose himself to cross-examination, despite clear instructions to the jury to consider the inculpatory evidence only against the

codefendant. We have left open the possibility that the inculpatory connection need not reside in the terms of the statement itself, but may be supplied by the content of the statement taken in connection with other evidence in the case. *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 7-10 (1973). But when the codefendant takes the stand and is subject to cross-examination, a denial of the constitutional right of confrontation expressed in the *Bruton* case is not involved. *Commonwealth* v. *Nolin,* 373 Mass. 45, 49 (1977), and cases cited. In the present cases all three defendants testified and were available for cross-examination. The second of Hicks's statements to Eaton and his statement to Abrahams were properly admitted against him, and instructions that those statements were not evidence against the other defendants sufficiently protected their rights.

2. *Motion to suppress* (Hicks, Marshall). Marshall assigns as error the denial of his motion to suppress the piece of paper, bearing the victim's handwriting, seized in his trailer in New Hampshire. Hicks concedes that he has no standing to challenge the search, but argues that, if the evidence is suppressed on Marshall's motion, it is inadmissible against him, since it was admitted only on a theory of common enterprise. Marshall's contentions are that the search and seizure violated N.H. Rev. Stat. Ann. § 595-A.5 (1976) in three respects: (1) the inventory of items seized was not made in his presence, although he was available; (2) he was not given a receipt for the items seized; and (3) the return on the warrant lacked the signature of the justice of the peace before whom the return was made.

There was no error. Violation of the statute is not a ground for exclusion of evidence under New Hampshire law. *State* v. *Gilson,* 116 N.H. 230, 234 (1976). *State* v. *Saide,* 114 N.H. 735, 737-738 (1974). See *Cady* v. *Dombrowski,* 413 U.S. 433, 449 (1973). After an extensive voir dire hearing, the judge found that Marshall was shown a copy of the inventory and did not assert that it was incom-

plete or otherwise inaccurate, and that the return was sworn to before the justice of the peace, although he inadvertently failed to sign it.

3. *Examination of prospective jurors* (Marshall, Witham). The judge asked each prospective juror whether he had heard of the case or knew anything about it. The eleventh juror called referred to "the scuttlebutt upstairs," and on further inquiry said that the scuttlebutt was that the case was being heard for the second time and was a murder case. The judge denied the defendants' motion to discharge the venire, and continued to ask the same series of question of some 220 prospective jurors, following up with additional questions where appropriate. Ten said they had heard about the case "upstairs," "downstairs," "from people talking," or "around the grapevine." Three of the ten had heard there was a mistrial. Eight of the ten were excused; two were chosen and sworn before the defendants had exhausted their peremptory challenges.

There was no error. Exposure of prospective jurors to discussion or comment about a case is not a ground for dismissal of the venire. *Commonwealth* v. *Horton,* 376 Mass. 380, 391-396 (1978), and cases cited. *Commonwealth* v. *Silva,* 371 Mass. 819, 822 (1977). When the situation was disclosed, it would have been proper for the judge to call in the remaining venire and admonish them not to discuss the cases and to inquire further of each potential juror as to conversations heard in the jury room. But no abuse of discretion was shown. Cf. *Commonwealth* v. *Stanley,* 363 Mass. 102, 105 (1973) (information as to prior trial in the District Court). Indeed, although the cases were tried in 1974, the judge complied with the statutory injunction of G. L. c. 234, § 28, as amended by St. 1975, c. 335, to "examine jurors fully with respect to possible bias or prejudice." *Commonwealth* v. *Dickerson,* 372 Mass. 783, 793 (1977).

4. *Denial of voir dire* (Witham). During the trial Witham moved for a voir dire on his identification by the

witness Webber. The judge noted that such a voir dire had
been held at the first trial, and that there was no repre-
sentation that there was new evidence. He denied the
motion as untimely under Rule 61 of the Superior Court
(1974), but allowed the transcript of the previous voir dire
and the findings made at the first trial to be made an
exhibit. There was no error. See *Commonwealth* v. *Lewis*,
346 Mass. 373, 382 (1963), cert. denied, 376 U.S. 933
(1964).

5. *Distinctive photograph* (Witham). On direct exami-
nation the witness Webber identified Witham as one of
the two men she had seen on the victim's street the eve-
ning of the crime. Cross-examination on behalf of the
defendant Witham brought out testimony that the police
had shown her five photographs and she had selected one.
On redirect examination, over the defendant Witham's
exception, the Commonwealth was permitted to put in
evidence the five photographs, including the photograph
of Witham the witness had selected. Witham now argues
that his photograph was the only one of the five showing
the dark hair and dark complexion the witness had de-
scribed to the police. After the voir dire at the first trial,
the judge found that these photographs "were of people
of about the same size and general description. There was
no impermissible indication or hint as to which one was
Witham." Those findings were supported by the evidence,
and we do not disturb them. *Commonwealth* v. *Murphy*,
362 Mass. 542, 548 (1972). Cf. *Commonwealth* v. *Kostka*,
370 Mass. 516, 523-524 (1976) (effect of wearing glasses).

6. *Restriction of cross-examination* (Hicks, Witham).
The witness Eaton testified on cross-examination that
the other principal witness for the Commonwealth,
Abrahams, was the uncle of her former husband, that she
had dated Abrahams after her husband and she broke up,
and that Abrahams had spent the night at her house
more than once seven or eight years before the trial. The
judge excluded questions inquiring into the circum-
stances of her divorce, whether she had "relations" with

Abrahams, whether Abrahams had ever given her "grass," and whether she had ever modeled for photographs. Hicks and Witham now argue that they were prevented from exposing the character of the continuing relationship between the two witnesses, and that such exposure was of paramount importance because Eaton provided the only corroboration of Abrahams's testimony.

Reasonable cross-examination of a witness to show bias or prejudice has long been matter of right. *Commonwealth* v. *Russ*, 232 Mass. 58, 79 (1919). *Commonwealth* v. *Graziano*, 368 Mass. 325, 330 (1975). But the right is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently aired. *Commonwealth* v. *Walker*, 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976). In the present cases that consideration was reinforced by the remoteness in time of the events in question. There was no error.

7. *Instructions on circumstantial evidence* (Hicks, Marshall, Witham). In his charge the judge discussed direct and circumstantial evidence and said that if, after drawing inferences and conclusions that struck them as logical and reasonable beyond their reasonable doubt, they still had a reasonable doubt of the guilt of a defendant, their verdict should be not guilty of that crime. He later instructed them that the burden was on the Commonwealth to satisfy them beyond their reasonable doubt that the defendant or defendants committed the essential elements of the crime. He then said, "The Commonwealth is not obliged to prove beyond your reasonable doubt the truth as to every single issue that comes up in a trial, because inevitably in a trial of this kind there are many collateral issues that arise going perhaps to the credibility of witnesses, disputes as to where a given witness may have been at a time, and *that sort of thing*" (emphasis supplied). He then elaborated on the meaning of reasonable doubt. The defendants contend that the quoted sentence, particularly the emphasized portion,

diluted the standard of persuasion with respect to circumstantial evidence. As to such evidence, they say, "the several circumstances upon which the conclusion depends must be fully established by proof . . . as if each one were itself the main fact in issue," quoting *Commonwealth* v. *Webster*, 5 Cush. 295, 317-318 (1850).

The quoted portion of the charge is accurate as far as it goes. We do not think the judge was required to give the *Webster* charge on circumstantial evidence. That charge also included a statement that failure of proof of a particular fact, not essential to the conclusion, "does not destroy the chain of evidence; it only fails to give it that particular corroboration, which the fact, if proved, might afford." *Id.* at 313. See *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts*, 393 U.S. 1058 (1969). Such detailed analysis, even though accurate, might have confused the jury, since the evidence was not entirely circumstantial. The charge is to be tested as a whole. *Commonwealth* v. *Bohmer*, 374 Mass. 368, 379 (1978). *Commonwealth* v. *Ramey*, 368 Mass. 109, 113-114 (1975). There is no reasonable likelihood that the charge taken as a whole could have led the jury to ignore the reasonable doubt test. *Commonwealth* v. *Leaster*, 362 Mass. 407, 416-417 (1972).

8. *Instructions on hypothetical cases* (Marshall, Witham). In defining participation in crime, the judge used as an example a lynching in which a hundred people participated but only three could be identified. He told the jury that on incontrovertible evidence against the three, they must be convicted even though the other ninety-seven go free. Later, in discussing a common plan to commit larceny, he used the case of a robbery in which two men went inside a house while a third stayed outside as a lookout. Marshall and Witham contend that these hypothetical cases propounded the Commonwealth's theory of the case, to their prejudice.

Throughout the charge, the judge took pains to avoid alluding to the evidence. He told the jury that they were

to find the facts, disregarding any factual statement he might make. Taken as a whole, the charge did not unfairly emphasize the Commonwealth's view of the facts. *Commonwealth* v. *Therrien*, 371 Mass. 203, 206-207 (1976).

9. *Felony murder* (Hicks). Hicks attacks the constitutionality of the felony-murder rule. We recently considered and rejected the same arguments. *Commonwealth* v. *Watkins*, 375 Mass. 472, 485-488 (1978). We now reject them again.

10. *Section 33E.* In accordance with our duty under G. L. c. 278, § 33E, we have reviewed the entire record, including the transcripts and exhibits, and we find no reason to change the ultimate outcome.

*Judgments affirmed.*