**Wayne S. HICKS, Petitioner, Appellee,**

v.

**William F. CALLAHAN, etc., Respondent, Appellant.**

**No. 88–1137.**

United States Court of Appeals, First Circuit.

Heard Sept. 16, 1988.

Decided Oct. 20, 1988.

Paula J. DeGiacomo, Asst. Atty. Gen., Criminal Bureau, with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Deputy Atty. Gen., Chief, Criminal Bureau, Boston, Mass., were on brief, for respondent, appellant.

Robert A. Sherman by Appointment of the Court, with whom Maria P. Nichols and Gaffin & Krattenmaker, P.C., Boston, Mass., were on brief, for petitioner, appellee.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by the Commonwealth of Massachusetts from the district court's opinion and order granting Wayne S. Hicks' petition for habeas corpus. We reverse.

## I. PROCEDURAL HISTORY

As usual in habeas corpus cases, this case has travelled a lengthy and tortuous procedural path. On November 12, 1974, Hicks and two co-defendants, Perley Witham and Joseph Marshall, were sentenced to life imprisonment without parole after being convicted by a jury of first degree murder, unarmed robbery, and confining and putting in fear for the purpose of stealing, committed on December 3, 1972.[1] The Massachusetts Supreme Judicial Court affirmed the convictions. *Commonwealth v. Hicks*, 377 Mass. 1, 384 N.E.2d 1206 (1979). Of the ten issues raised by defendants on direct appeal, only one, the Massachusetts felony-murder rule, is now pertinent. Hicks did not object to the instruction on felony-murder at trial but attacked it on appeal[2] as violating the guarantees of due process and the proscription against cruel and unusual punishment contained in Articles 1, 10, 12 and 26 of the Massachusetts Declaration of Rights. The Supreme Judicial Court tersely rejected these claims.

The case then shifted to the federal courts; Hicks filed a petition for a writ of habeas corpus on July 9, 1979. He alleged, *inter alia,* that the imposition of the felony-murder rule violated his federal constitutional rights under the fifth, sixth, eighth and fourteenth amendments. The main thrust of Hicks' federal constitutional challenge was that the use of the felony-murder rule relieved the Commonwealth from proving beyond a reasonable doubt an essential element of the crime of first degree murder, malice aforethought. The petition was amended to add the claim that under Massachusetts law the felony-murder rule did not apply and Hicks was, therefore, convicted of first degree murder without proof of malice aforethought in violation of

---

1. This was the second trial. The first trial had ended in a mistrial.

2. Hicks was the only one to raise the issue.

the due process clause of the fourteenth amendment to the federal constitution.

After a hearing, the district court, on October 30, 1984, issued a memorandum finding that the Supreme Judicial Court had not examined the facts of the case to determine whether the Massachusetts felony-murder rule should apply. The court also found that petitioner had not exhausted his state remedies in regard to his felony-murder rule claim and, under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), dismissed the petition without prejudice.

Hicks then revisited the state courts. His motion for a new trial was denied by the Massachusetts Superior Court and then by a single justice of the Supreme Judicial Court. Petitioner returned to the United States District Court on June 30, 1987 and the decision on appeal issued thereafter.

## II. THE DISTRICT COURT OPINION

After reviewing the two cases that modified the Massachusetts felony-murder rule,[3] both of which were decided more than three years after the opinion in *Commonwealth v. Hicks*, the district court held:

> In Moran, [*Commonwealth v. Moran*, 387 Mass. 644, 442 N.E.2d 399 (1982)] the Supreme Judicial Court held that unarmed robbery is a non-inherently dangerous felony. To sustain a felony-murder conviction, therefore, there must be a finding that the defendant had a conscious disregard of risk to human life when committing the unarmed robbery.

The court held that the "evidence does not support a finding that Hicks acted with a conscious disregard of risk to human life." The court further found:

> Although there was risk that Welch could be hurt in the process, the evidence does not support a finding that a reasonable prudent person, aware of the circumstances known to Hicks, would have concluded that "there was a plain and strong likelihood that death would follow

the contemplated act" of unarmed robbery.

Nowhere in its opinion did the court state what federal constitutional rights of the petitioner had been violated. We will assume, however, that the court found a federal due process constitutional violation on the ground that the record is devoid of sufficient evidence of the malice necessary for a conviction under the Massachusetts felony-murder rule.

We disagree with the district court's interpretation of the Massachusetts felony-murder rule in effect at the time petitioner's direct appeal was decided by the Supreme Judicial Court. We also disagree with the court's assessment of the record facts.

## III. THE MASSACHUSETTS FELONY-MURDER RULE

In rejecting Hicks' attack on the constitutionality of the felony-murder rule under the Massachusetts Constitution, the Supreme Judicial Court relied on *Commonwealth v. Watkins*, 375 Mass. 472, 379 N.E. 2d 1040 (1978). We, therefore, examine *Watkins* to determine the scope and effect of the Massachusetts felony-murder rule at the time of petitioner's direct appeal. The rule was defined in *Watkins* as follows:

> As developed by the case law, the felony-murder rule in the Commonwealth imposes criminal liability for homicide on all participants in a certain common criminal enterprise if a death occurred in the course of that enterprise. "It is settled law that if two or more combine to commit a robbery and a homicide results, each is criminally responsible for the acts of his associates in the perpetration of the common design for which they conspired; and it is no defense for the associates engaged with others in the commission of a robbery, that they did not intend to take life in its perpetration, or that they forbade their companions to kill." *Commonwealth v. Devereaux,*

---

**3.** *Commonwealth v. Matchett,* 386 Mass. 492, 436 N.E.2d 400 (1982) and *Commonwealth v.*

*Moran,* 387 Mass. 644, 442 N.E.2d 399 (1982).

256 Mass. 387, 392, 152 N.E. 380, 383 (1926).

*Id.* 379 N.E.2d at 1049. The court rejected defendant's argument that the felony-murder rule violated the due process requirements of the fourteenth amendment to the United States Constitution because it "relieved" the state of its burden of proving an essential element of the crime of murder, malice aforethought. The *Watkins* court reasoned as follows:

Under the theory of felony-murder the Commonwealth is still charged with proving the element of malice aforethought essential to the felony associated with the homicide. Once established the malice aforethought accompanying the robbery or rape or other felony "punishable with death or imprisonment for life," G.L. c. 265, § 1, is 'constructively' applied to the homicide.

The defendant's arguments alleging the unconstitutionality of such application are unpersuasive. The Commonwealth is not, pursuant to the operation of the felony-murder rule, "relieved" of its duty prescribed by the United States Supreme Court in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 268 (1970), of proving every fact necessary to the crime as charged beyond a reasonable doubt. Nor is the burden of proof as to an element of the crime charged "affirmatively shifted" from the Commonwealth to the defendant as prohibited by the Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 701, 95 S.Ct. 1881, 1890, 44 L.Ed.2d 508 (1975).

*Id.* There can be no question that the application of the felony-murder rule to petitioner followed the law as set forth in *Watkins.*

We next consider the two cases on which the district court relied in finding that Hicks was convicted in violation of the applicable felony-murder rule. In *Commonwealth v. Matchett*, 386 Mass. 492, 436 N.E.2d 400, the court held:

[W]hen a death results from the perpetration or attempted perpetration of the statutory felony of extortion, there can be no conviction of felony-murder in the

second degree unless the jury find that the extortion involved circumstances demonstrating the defendant's conscious disregard of the risk to human life.

*Id.* 436 N.E.2d at 410. In reviewing the history of the felony-murder rule in Massachusetts, the court stated:

This court has never automatically applied the felony-murder rule without viewing the facts of the case.[14] We require, for example, that a homicide committed in the course of a felony or attempted felony, be the natural and probable consequences of the act. See *Commonwealth v. Devlin*, 335 Mass. 555, 566–567, 141 N.E.2d 269 (1957). We have never delineated exactly which felonies give rise to application of the rule, nor have we expressly limited its application to the common law felonies.[15] (n. 14 omitted).

*Id.* 436 N.E.2d at 408. Footnote 15 explicitly refers to *Commonwealth v. Hicks:*

15. The vast majority of felony-murder convictions in this Commonwealth rest on the inherently dangerous common law felonies of arson, rape, burglary, and robbery. , See, e.g., *Commonwealth v. Hicks*, 377 Mass. 1, 384 N.E.2d 1206 (1979) (robbery); *Commonwealth v. Watkins*, 375 Mass. 472, 379 N.E.2d 1040 (1978) (robbery and kidnapping).

In light of its holding, which is limited to extortion, and the above quoted footnote, *Matchett* is of no help to petitioner.

■ We therefore turn to *Commonwealth v. Moran*, 387 Mass. 644, 442 N.E. 2d 399 (1982) which, after discussing *Matchett*, held:

where the underlying felony is unarmed robbery, the felony-murder rule applies only if the jury find from the circumstances of the felony that the defendant consciously disregarded risk to human life.

*Id.* 442 N.E.2d at 403. The court then explicitly noted:

The rule we announce today applies to cases that are pending on direct appeal or as to which the time for direct appeal has not expired on the date of this decision. Our decision does not provide a

basis for collateral attack of final judgments.

*Id.* n. 3. Thus, the Supreme Judicial Court makes clear that the new rule announced in *Moran* does not apply to petitioner, whose direct appeal had already been exhausted at the time of *Moran.* Nor is there a valid federal constitutional reason for giving the *Moran* rule retroactive effect. *See Brown v. Louisiana*, 447 U.S. 323, 327–29, 100 S.Ct. 2214, 2219–20, 65 L.Ed.2d 159 (1980); *Sanders v. Fair*, 728 F.2d 557 (1st Cir. 1984).

## IV. THE EVIDENCE

The evidence presented to the jury included the following. Petitioner (Hicks), Witham and Marshall started out on the evening of December 3, 1972 with the intent to rob Norman Welch. Welch ran a florist business adjacent to his home on Oak Street in Newburyport, Massachusetts. Bert Abrahams, a/k/a Beano, had told Hicks and Marshall about six to eight weeks prior to December 3 that Welch was an "easy score," that he probably had about $10,000 in a strong box on his premises. Sometime after that, Abrahams and Hicks had broken into Welch's greenhouse in a vain attempt to find the reported cache of money.

Roy Roberge, a gas station attendant in Newburyport, testified that Hicks and Marshall, whom he knew, and a third man drove into the filling station where he worked at about 6:30 p.m. on December 3. Marshall got out of the car and went into the building on the premises and came out carrying two flashlights of the type the gas station was selling.

Sometime between 6:30 and 7:00 p.m., the trio went to the home of Jean Eaton in Newburyport. Eaton knew Hicks and Marshall; the third man was described as having dark hair and a full mustache. Hicks talked to Eaton privately and offered her money if she would call Welch's house and "ask him to go out for flowers or to the hospital or something like that." Eaton refused to become involved.

A short time later Hicks, Marshall and Witham stopped at the house of Bert Abra-hams. Hicks told Abrahams that they were going to rob "Welchie" and asked Abrahams to come along. Abrahams refused.

Wendy Webber, who lived on Oak Street, three houses away and across the street from Welch's house, testified to the following effect. She and her boyfriend left her house at approximately 5:45 p.m. December 3. Webber's boyfriend turned on the high beam lights in the car and she saw Witham and one other man standing across the street from Welch's house. Webber was not able to identify the man with Witham.

Pamela McBurnie, who was ten years old at the time, was visiting a relative on Oak Street on the evening of December 3, 1972. She saw three men get out of a car parked on Oak Street and stand next to Welch's greenhouse. One of the three men got back into the car; this man had a mustache.

At about 9:45 p.m. Hicks and Witham stopped by again at Abrahams' house. Abrahams asked Hicks how he made out, and Hicks said they got about fifteen thousand dollars ($15,000).

Welch's body was found by the police at approximately 10:15 p.m. on the night of December 3. The police had responded to an anonymous telephone call. Dr. George Curtis, the pathologist who conducted the autopsy on December 4, testified as follows. The body was fully clothed. The victim's wrists were tied together by electric extension cords, which also bound the wrists to the ankles behind the victim's back. The face and neck of Welch were covered with abrasions; the bridge of the nose was fractured and the right side of his face was flattened. Welch had sustained a compound fracture of the jaw with splintering of the bone. There were extensive hematomas on the internal area of the mouth. The cricoid bone of the larynx (the Adams apple) had been fractured. The thyroid gland was covered with a hemorrhage and there were signs of massive hemorrhaging in the neck area. It was Dr. Curtis's opinion that Welch's death was caused by multiple blows to the head and neck with a fracture of the cricoid bone in

the larynx resulting in asphyxia. Dr. Curtis gave the immediate cause of death as asphyxiation. It was his opinion that the fracture of the cricoid bone could not have been caused by a single blow from a fist; that it looked to him that this fracture and the other injuries were due to a kicking or stomping, or by blows from a flashlight.

Abrahams testified that the next day, December 4, he saw Marshall at work and Marshall told him:

> They went down to rob Welchie and they made some noise out in the yard. Welchie came out and he went to hit him on the chin and knock him out. And he said that he thought he hit him in the throat. He said they grabbed him and they pulled him inside, tied him up and gagged him. Said Welchie kept hollering and screaming and everything, so he kept hitting him, trying to knock him out.

Abrahams also testified that he had given the police another statement of what Marshall had told him about the murder:

> And he said that they had went down to Welch's house, and that they had made some noise in the back yard and, Mr. Welch had come out. He said he went to hit him on the chin, and missed him. And thinks he struck him in the throat, and he said he started hollering and screaming and everything, so him and Witham carried him in the house and tied him up, and said he was screaming and hollering in there so they tied him up and gagged him.

Clifton Brown, who had been in jail with Abrahams, testified that Abrahams told him (Brown) that Marshall had told Abrahams the following: They had lured Welch out of his house with bird calls. Marshall misplaced a punch and hit Welch in the throat. At this time Hicks was outside of the house.

Based on this evidence, the trial jury could reasonably have found the following facts beyond a reasonable doubt. Hicks was the ringleader and planner of the robbery. Hicks was out of the car and present when the initial assault on Welch outside the house took place. The jury could have found that Hicks, as the one in charge, did

nothing to prevent or mitigate the attack on Welch. Although Hicks, Marshall and Witham were unarmed, the jury could have found from the evidence of the brutal beating given Welch, that it was the intent of all three to use as much force as necessary to accomplish the robbery. Welch was tied up and subjected to a savage beating. This is not the case of death resulting from a single misdirected blow.

 Under the felony-murder rule in effect at the time of Hicks' trial, there was sufficient evidence to sustain a finding of murder in the first degree. This is as far as we need go. But we add that, unlike the district court, we believe that the evidence *could* support a finding that the defendant consciously disregarded risk to human life.

REVERSED. The petition for habeas corpus shall be dismissed.