David COLES, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 310, 2007.

Supreme Court of Delaware.

Submitted: Aug. 27, 2008.
Decided: Sept. 15, 2008.

Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. I.D. No. 0301011099.

James J. Haley, Jr., Esquire, of Ferrara, Haley & Collins, Wilmington, DE, for Appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, DE for Appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

JACOBS, Justice.

David Coles ("Coles"), the defendant below, appeals from a Superior Court final judgment of conviction. Coles was charged with Murder in the First Degree and two weapons offenses. A jury found Coles guilty of the lesser-included offense of Murder in the Second Degree, and also of the two weapons offenses. On appeal, Coles claims that the Superior Court abused its discretion by: (1) refusing to issue a bench warrant to compel the appearance of a "material" witness; (2) excluding from evidence that witness' videotaped statement to the police; and (3) instructing the jury on the lesser-included offenses of Murder in the Second Degree and Manslaughter. We find no merit to Coles' claims and affirm.

### FACTS

On the morning of January 10, 2003, Coles noticed a package in the alley adjoining the house where he lived, in Wilmington, Delaware. Coles retrieved the package (which contained marijuana and cocaine), and brought it inside his home. Sometime later, Aaron Fairley ("Fairley") knocked on Coles' door, and accused Coles of stealing his drugs. Coles handed the drugs to Fairley, who then walked away from Coles' residence.

Moments later, Coles also walked out of his residence and heard Fairley yelling to others on the street that Coles had "stolen [his] package [and that] [Fairley] should bust [Coles] in the face." An argument between Fairley and Coles then ensued. According to Coles, Fairley "never took his hand out of his pocket [which] in the streets ... is a non-verbal [cue] for I have a weapon." At some point, Coles flinched, as if Fairley was about to hit him.[1] Coles

---

1. Coles and Fairley were 2–3 feet apart and another man was trying to keep them separat-   ed.

then backed away and flashed a semiautomatic gun he had under his waistband.[2] Fairley saw the gun and started walking away while threatening Coles that he would return to "get [him] when the sun go[es] down." Coles testified that he then turned and began walking towards the car that was waiting for him. As he was proceeding towards the car, Coles heard a shot, to which he responded by firing his gun four times (presumably in the direction of the shot), while retreating to his home. Two of the four bullets hit Fairley, who died shortly afterwards.[3]

On January 15, 2003, five days after the shooting, the police interviewed Kimberly Brown Sudler ("Sudler"), who lived across the street from Coles' home. Sudler had called the police because "[e]very day gunshots [had] been going off" on the block where she lived. Sudler was interviewed generally about incidents occurring on that block, but the subject of Fairley's homicide was also specifically discussed. Sudler stated:

> I seen them going in and out of that house, take off [ . . . ]. I didn't actually see them with the guns. I seen them out there. I seen Keith [Evans] throw something behind the wall, and he said something to the boys that's on the porch next door to the house that's for rent.
>
> * * *
>
> The day of the homicide I heard the shots go off . . . I seen the boys run off the second porch. I seen them pass something to somebody else . . . I seen Keith [Evans] standing here. . . . I heard them say, "Get him out of here,

get him out of here, get him out of here." And these boys [are] always on this porch . . . [A]nd the light-skinned boy . . . with a beard and grays going straight back, stocky, he was the one that passed something to Keith [Evans].[4]

On May 31, 2005, Coles was indicted on charges of Murder in the First Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. In October and November 2006, Coles' case was tried before a Superior Court jury. On October 17, 2006, a subpoena that had been issued to compel the appearance of Sudler (as a witness for the State) could not be served, because the address indicated on the subpoena was a vacant house.

On the first day of the trial (October 31, 2006), the prosecutor indicated that the State did not intend to call Sudler as a witness because they were unable to find her. On the second day of the trial (November 1, 2006), defense counsel indicated that he had prepared a subpoena for Sudler (as a defense witness) and that an investigator would to attempt to find Sudler and serve her with the subpoena. On the third day of the trial, November 6, 2006, defense counsel informed the trial judge that the subpoena had been handed to Sudler's mother by the investigator, on November 3, 2006. The investigator believed that Sudler was residing at her mother's house, because from outside the house the investigator saw someone in the living room who matched the (oral) description of Sudler that defense counsel had provided to him—based on counsel's

---

2. Coles later testified that he had found that gun stashed behind his house and that it was his intention to discard the gun that day during a trip to Philadelphia.

3. At the scene, the police found four shell casings from a .45 caliber firearm and six shell casings from a .9 millimeter firearm.

4. Sudler could not tell what was the object that was passed.

review of Sudler's videotaped statement to the police.

Because Sudler did not appear at the courthouse at the time and date indicated on the subpoena (November 6, 2006, at 9:00 a.m.), defense counsel asked the court to issue a bench warrant for Sudler's apprehension as a material witness for the defense.[5] Alternatively, defense counsel requested that Sudler's videotaped out-of-court statement to the police be admitted into evidence under D.R.E. 807. The trial court summarily denied the request for a bench warrant, stating:

> [I]t appears that there was an attempt to serve a subpoena which was apparently unsuccessful. I'm not persuaded on the existing record that a basis exists for issuing an arrest warrant or capias to this witness at this time.[6] If the defense is unable to serve a subpoena in a time which avoids unreasonable disruption of the trial, admissibility of her statement based on her alleged unavailability will be considered. If the defendant desires, I can address the issue on this basis [on November 8, 2006, the next trial day] or if efforts to subpoena her are still ongoing, later. And if ... I proceed with that analysis, I may just listen to this tape or watch this tape to ... [determine whether] there are two separate incidents mixed up.

On the fourth day of trial, November 8, 2006, the investigator testified about his efforts to locate Sudler. The investigator stated that based on his review of the videotape from the police station, the person he saw in the living room at Sudler's mother's house was Sudler. In light of the investigator's testimony, the Superior Court declared Sudler an "unavailable" witness under D.R.E. 804(a)(5). Later that same day, after reviewing the videotape, the trial court denied the application to have the videotape admitted into the evidence, holding that:

> I see that [Sudler] begins by describing an incident in which two men are shooting and four or five men are running. It becomes clear that this incident is different from the one which is later described as the homicide, which is the incident in this case. [...] Therefore, the first incident involving two men shooting would have to be redacted out anyway as irrelevant, intending to mislead the jury.
>
> As to the remainder, [Sudler]'s statement is no more probative on what occurred than the testimony of the witnesses who have already testified here in Court and doesn't tend to establish any new material fact. In addition, I am not persuaded that the statement is particularly reliable in the absence of an opportunity to have the witness cross-examined in Court to clarify what she says and I am not persuaded that admission of the videotape serves the purposes of the rules of evidence or the interest of justice. Therefore, the State's objection to the admission of the videotape is sustained.

At the prayer conference which took place on November 9, 2006, defense counsel proposed a self-defense instruction that included a theory of "imperfect self-defense." The Superior Court agreed to give a self-defense instruction but refused to incorporate the language suggested by the

---

5. Defense counsel provided the address of Sudler's mother and suggested to the trial judge that Sudler could be brought in to testify on the next day of trial, which was November 8, 2006.

6. The trial judge had not reviewed the videotape at the time when this ruling was made.

defense counsel. The trial court did, however, entertain defense counsel's suggestion that the word "subjectively" be inserted in the instruction, as follows:

> A defense raised by the defendant in this case . . . is justification. The Delaware Code defines the defense as follows: The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.[7] [ . . . ] Justification, or as it is sometimes called, self-defense, is a defense that the defendant *subjectively* believed that the force used was immediately necessary to protect himself against the use of unlawful force by the other person . . .

The trial court then granted, over defense counsel's objection, the State's request that the jury be instructed on Murder in the Second Degree and Manslaughter, as lesser-included offenses to the lead charge of Murder in the First Degree.

On November 13, 2006, the jury returned a verdict finding Coles guilty of Murder in the Second Degree and of the two weapons offenses. On November 22, 2006, Coles moved for new trial. The Superior Court denied that motion on March 30, 2007. Coles was sentenced in on June ·20, 2007. This appeal followed.

### ANALYSIS

■ Coles first claims that the Superior Court erred in denying his request to issue a warrant to compel the appearance of Sudler to testify as a defense witness. The decision to issue a material witness warrant lies within the Superior Court's discretion,[8] but that discretion is constrained by a defendant's Sixth Amendment right to compulsory process.[9] Therefore, we review the Superior Court's refusal to issue the warrant for abuse of discretion,[10] but to the extent Coles claims that his constitutional rights were infring-

---

7. *See* 11 *Del. C.* § 464(a) (defining justification).

8. *See* 11 *Del. C.* § 5102 (providing that "the Superior Court, in the exercise of its criminal jurisdiction, may issue subpoenas and other warrants into any county in the State, for *summoning* or bringing any person to give evidence in any matter triable before it and may enforce obedience by fine or imprisonment."); Super. Ct.Crim. R. 17(g) (providing that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.").

9. *Brown v. State*, 729 A.2d 259, 263 (Del. 1999) ("A criminal defendant has the right to compulsory process to obtain the appearance of witnesses to testify on his behalf."); *Keshishian v. State*, 386 A.2d 666, 667 (Del.1978) (holding that a defendant's right to compulsory process guaranteed by both the federal and the state constitutions includes the right to "put on the stand a witness who (is) physical-ly and mentally capable of testifying to events that (s)he had personally observed and whose testimony would have been relevant and material to the defense") (citing *Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)); *United States v. Simpson*, 992 F.2d 1224, 1230 (D.C.Cir.1993) ("Although a decision to issue a bench warrant to compel the appearance of a witness lies within the trial judge's discretion, that discretion is constrained by the defendant's Sixth Amendment right to compulsory process.") (citing *United States v. Goodwin*, 625 F.2d 693, 704 (5th Cir.1980)).

10. *See, e.g., City of Bellevue v. Vigil*, ·66 Wash. App. 891, 833 P.2d 445, 448 (1992) ("A trial court's decision to grant or deny a motion for issuance of a material witness warrant is reviewed for a manifest abuse of discretion."); *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex.2003); *State v. Cyrus*, 60 N.C.App. 774, 300 S.E.2d 58, 59 (1983); *Commonwealth of Mass. v. Watkins*, 375 Mass. 472, 379 N.E.2d 1040, 1050 (1978).

ed, our review is *de novo.*[11]

■ "The right to compulsory service is not absolute and the defendant must show that the witness' testimony would be both material and favorable."[12] Coles has not made the required showing. Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact."[13] "A mere showing by the accused that some relevant evidence was excluded is insufficient" to establish a violation of the defendant's Sixth Amendment right to compulsory process.[14] Further, "where the expected testimony of an individual is merely cumulative of other available testimony to the same effect ... the denial of process to obtain or compel the attendance of that individual" does not necessarily amount to an abuse of discretion.[15]

■ Here, Coles argues that Sudler was a "material" witness for the defense because, based on her videotaped statement to the police, Sudler's expected testimony would have been that: (a) two men were involved in the shooting in front of Coles' residence that resulted in Fairley's death, which would have corroborated Coles' testimony that he was acting in self-defense and would have contradicted the evidence presented by the State that only Coles had a gun; and (b) she saw Keith Evans ("Evans"), one of the State's witnesses, recover an item from Fairley and then throw something behind the wall, which would

have explained why no guns or drugs were found on Fairley's person when the police arrived and would have "implicated [the] State's witness Evans in covering up the victim's activities after he was shot." In our view, the Superior Court correctly found that Coles' contention as to Sudler's expected testimony is not supported by the transcript of her videotaped statement to the police.

Regarding the first point, Sudler never stated that she saw two men with guns on the day that Fairley was shot. Her statement about two men being involved in a shooting was in reference to another incident that took place on the same block a few days after Fairley's homicide. When asked specifically about the homicide, Sudler stated only that she "heard the shots go off," but not that she witnessed the shooting. Sudler also stated that "I didn't actually see them with the guns." Therefore, Sudler would not have been able to corroborate Coles' testimony that both he and Fairley had guns.

With respect to the second point, Sudler did not tell the police that she saw Evans retrieve something from Fairley's body, or that Fairley passed something to Evans. Sudler stated that a "light-skinned boy ... with a beard ..., stocky, ... passed something to [Evans]." The description of the "light-skinned boy" did not match the physical appearance of Fairley. Moreover, Sudler's account of the what had happened is confusing because she also stated that

11.  *Pierce v. State,* 911 A.2d 793, 796 (Del. Supr.) (citing *Williamson v. State,* 707 A.2d 350, 362 (Del.1998)); *Spencer v. State,* 868 A.2d 821, 822 (Del.Supr.).

12.  *Gordon v. State,* 1990 WL 168256, at *2 (Del.Supr.) (citing *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 873, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *State v. McLaughlin,* 514 A.2d 1139, 1141–42 (Del.Super.1986); *Keshishian v. State,* 386 A.2d 666, 667 (Del.1978)).

13.  *Gov't of the Virgin Islands v. Mills,* 956 F.2d 443, 446 (3d Cir.1992) (citing *Valenzuela–Bernal,* 458 U.S. at 874, 102 S.Ct. 3440).

14.  *United States v. Cruz–Jiminez,* 977 F.2d 95, 100 (3d Cir.1992).

15.  *Commonwealth of Mass. v. Watkins,* 375 Mass. 472, 379 N.E.2d 1040, 1051 (1978).

she saw some "boys" who were sitting on a porch next to Coles' house run off when the shooting started and "pass something to somebody else."[16] Finally, Sudler stated that she did not see what was passed, nor did she state what Evans threw "behind the wall." In conclusion, Sudler's testimony may have been relevant to a certain extent, but it was neither "material," nor necessarily "favorable" to the defense. Therefore, the Superior Court did not abuse its discretion or infringe Coles' Sixth Amendment right to compulsory process in refusing to issue a material witness warrant.[17]

Coles next claims that the Superior Court committed reversible error in refusing to allow Sudler's videotaped statement to the police to be admitted into evidence. We review evidentiary rulings of the Superior Court for an abuse of discretion.[18] To the extent Coles contends that the Superior Court's refusal to compel the appearance of Sudler, coupled with the exclusion of her videotaped statement to the police amounted to a violation of his Sixth Amendment right to present a defense, we review his claim *de novo.*[19]

■ Coles argues that the trial court should have allowed Sudler's videotaped statement to be shown to the jury, because that statement was admissible under D.R.E. 807, the residual exception to hearsay, which relevantly states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule, if the court determines that: (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Here, as discussed above, the first requirement is not met, because Sudler's statement did not pertain to a "material fact." Sudler specifically stated that she did not see the homicide. Moreover, the Superior Court correctly concluded that the first portion of Sudler's statement described a

---

16. It is unclear whether that statement, although it was made during the conversation about the homicide, referred to the homicide or to the incident that had occurred a few days later.

17. We also note that the record establishes that the defense made no attempt to subpoena Sudler before the trial began. Although that might have been reasonable, given that Sudler was listed to appear as a State witness, the defense never *properly* served Sudler with a subpoena to appear during the trial. *See* Super. Ct.Crim. R. 17(d) ("Service of a subpoena shall be made by delivering a copy thereof to the person named."). Here, the subpoena was not delivered to Sudler but to someone who identified herself as Sudler's mother.

18. *Manna v. State,* 945 A.2d 1149, 1153 (Del. 2008); *Smith v. State,* 913 A.2d 1197, 1228 (Del.2006); *Dollard v. State,* 838 A.2d 264,

266 (Del.2003); *Seward v. State,* 723 A.2d 365, 372 (Del.1999); *Smith v. State,* 560 A.2d 1004, 1007 (Del.1989) ("[T]rial judges possess wide discretion in deciding the admissibility and the manner of presentation of evidence before the court and jury. [...] Therefore, absent an abuse of discretion, we do not disturb such rulings. [...] In each instance, the trial judge is in a unique position to evaluate and balance the probative and prejudicial aspects of the evidence.").

19. *Jones v. State,* 940 A.2d 1, 9–10 (Del.2007). We find no merit, however, to Coles' constitutional claim, because he was given the opportunity to, and did in fact, present the defense of justification that Sudler's testimony or her statements to the police would have allegedly supported.

shooting incident different than the one at issue in the present case, which would have confused and mislead the jury. Therefore, the admission of that statement would not have served the general purposes of the rules of evidence or the interests of justice, and the Superior Court properly exercised its discretion in declining to allow that statement to be admitted into evidence.[20]

Coles' last claim is that the Superior Court committed reversible error in instructing the jury on Murder in the Second Degree and Manslaughter, as lesser-included offenses to the lead charge of Murder in the First Degree. Those instructions were requested by the State and were given by the Superior Court over defense counsel's objection. We review a trial court's decision to give a jury instruction over the defendant's objection *de novo*.[21]

Pursuant to 11 *Del. C.* § 206, "[t]he court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."[22] Here, Coles was charged with Murder in the First Degree, which requires that "[t]he person intentionally causes the death of another person."[23] Upon the State's request, the Superior Court instructed the jury on Murder in the Second Degree and Manslaughter. A person is guilty of Murder in the Second Degree when "[t]he person recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life."[24] Manslaughter may be found where "[t]he person recklessly causes the death of another person."[25] Thus, the only difference between the original offense and the lesser-included offenses was the defendant's state of mind.

The question becomes whether there was a rational basis in the evidence for finding that Coles had acted recklessly in

20. Coles concedes that "on its face, the Sudler statement may be interpreted as describing a different shooting than the Coles/Fairley shooting" but argues that such a question of interpretation was for the jury, and not for the trial judge to decide. Coles relies on *United States v. Simpson*, 992 F.2d 1224, 1230 (D.C.Cir.1993) (holding that "a trial judge may not invade the province of the jury and independently weigh the probativeness of relevant evidence" and that "[o]nce the defendant has alleged facts that, if true, demonstrate the necessity of the witness' testimony, the court is obligated to lend its authority in compelling the sought-after witness appearance."). Coles' argument refers to the second requirement of D.R.E. 807 (that the statement be more probative than any other evidence which the proponent could procure through reasonable efforts) and, as such, presupposes that the first requirement of D.R.E. 807 (that the statement be relevant and offered as evidence of a material fact) is met. Here, the Superior Court correctly determined that Sudler's statement was irrelevant and/or immaterial.

21. *Cabrera v. State*, 2008 WL 2668805, at *2 (Del.Supr.) ("Here, the trial judge gave the instruction over defense counsel's objection and without any request. Our review is *de novo*.") (citing *Wright v. State*, 953 A.2d 144, 148 (Del.2008) ("[O]n appeal a question of law is presented: did the trial court, in determining the litigant's entitlement to a jury instruction, properly apply the relevant statutory provision to the facts at bar?").

22. 11 *Del. C.* § 206(c). *See also Wiggins v. State*, 902 A.2d 1110, 1113 (Del.2006) (citing *State v. Cox*, 851 A.2d 1269, 1275 (Del.2003)) (noting that Delaware utilizes the "mutuality of right doctrine, which affords the prosecution the ... opportunity to have the jury receive lesser-included offense instructions.")).

23. 11 *Del. C.* § 636(a)(1).

24. 11 *Del. C.* § 635(1).

25. 11 *Del. C.* § 632(1).

causing the death of Fairley. Coles argues that "there was no basis to charge any lesser included offenses [because] [t]he evidence supported either a justification defense, as alleged by Coles, or an intentional, unjustified killing, constituting Murder First degree." There was no third alternative. By charging the jury on the lesser included offenses, Coles argues, "the Court allowed the jury to unreasonably compromise between Coles' justification defense and the Murder first charge." We disagree.

■ Under 11 *Del. C.* § 231, "[a] person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[26] Here, the evidence presented at trial was sufficient to enable the jury to find that Coles consciously disregarded the substantial and unjustifiable risk that his conduct could result in Fairley's death. James Sumpter, Tyrone Bailey and Keith Evans all testified that (i) Coles and Fairley had an argument about a package of drugs that Coles had taken from Fairley's hiding place, and (ii) Fairley was walking away from Coles' home when Coles began shooting. The evidence presented at trial further established that Coles fired his semiautomatic gun four times, and that two of the shots hit and fatally wounded Fairley.[27] The shooting occurred at noontime, on a city street where several people were present. Moreover, Coles testified that, after Fairley started walking away from his house, he (Coles) turned and started walking towards a car that was waiting for him, at which point he heard a shot and "fired back." Coles also testified that "when [he] was shooting back, [he] was in the position of retreating to [his] house" and "was running to [his] house." Coles further stated that he saw Fairley "stumbling across the street," so he "figured [he] hit him." From this testimony, the jury could infer that Coles fired his semiautomatic gun in Fairley's direction, four times, in a public place; and that he consciously disregarded the risk that his conduct might cause someone's (here, Fairley's) death. Because there was a reasonable basis in the evidence to find that Coles acted recklessly in causing Fairley's death, and to convict him of the lesser-included offenses, the trial court did not err in instructing the jury on the two lesser-included offenses.

### CONCLUSION

Because the Superior Court committed no legal error and did not abuse its discretion, we affirm.

---

26. 11 *Del. C.* § 231(e).

27. In granting the State's request to instruct the jury on the lesser-included offenses, the Superior Court noted: "[T]here's been evidence that the defendant fired about four times, hit the victim twice, which means he missed him twice. I think the juror could conclude that he just aimed at—sort of over at him and pulled the trigger and maybe he would hit him, maybe he wouldn't hit him."