IN THE SUPREME COURT OF THE STATE OF DELAWARE

ISAAC JOHNSON, §
§ No. 319, 2024
Defendant Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 2202009839 (N)
STATE OF DELAWARE, §
§
Appellee. §

Submitted: May 7, 2025
Decided: May 8, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **LEGROW**, Justices.

### <u>ORDER</u>

After consideration of the briefing by the parties, and following oral argument, the Court rules as follows:

(1)    A Superior Court jury convicted Isaac Johnson of rape, three counts of sexual abuse of a child by a person in a position of trust, authority or supervision, and six counts of unlawful sexual contact.  The trial judge sentenced Johnson to 63 years of Level 5 incarceration followed by probation.  On appeal, Johnson argues that the Superior Court exceeded its discretion when it allegedly denied him the right to present a complete defense.  He contends that the court should not have prevented him from testifying about the sexual behavior of the victim's mother.  We are unpersuaded by his argument and affirm the Superior Court's judgment.

(2)     In early 2021, Marie Smith met Johnson through social media, and the two became romantically involved.[1]  That fall, Johnson moved into Smith's home, which Smith shared with her daughter ("L.F."), mother ("Mama Marie"), and other family members.[2]  Johnson, Smith, and L.F. lived in the home's basement.[3]  L.F. slept in a bed next to Johnson and Smith.[4]  While Smith worked during the day, L.F. attended virtual school at home supervised by Mama Marie.[5]  During this time, L.F. primarily stayed on the first floor, while Johnson primarily stayed in the basement or went outside the home.[6]

(3)     Early in the evening of February 9, 2022, Smith arrived home from work and found L.F. downstairs alone with Johnson.[7]  Smith testified that it was not normal for Johnson to be alone with L.F.[8]  Johnson testified that, when he came home around 3:00 p.m., he found L.F. in the basement video calling with her father.[9]

---

[1] App. to State's Answering Br. at B4–5 (Tr. 11:19–12:23, 13:09–15:11) [hereinafter B__]; B60 (Tr. 61:18–62:04).

[2] B5 (Tr. 17:02–05); B61 (Tr. 66:02–04).

[3] B3 (Tr. 08:02–12); B60 (Tr. 64:01–07).

[4] *Id.* (Tr. 08:16–19); B60 (Tr. 64:07–08).

[5] *Id.* (Tr. 19:04–16); B61 (Tr. 65:23–66:15).

[6] B6 (Tr. 19:07–14); B61 (Tr. 66:10–67:15).

[7] B7 (Tr. 22:23–23:02); B62 (Tr. 72:16–21).

[8] B7 (Tr. 22:23–23:11).

[9] B62 (Tr. 69:10–70:19).

He recalled overhearing L.F. asking her father to take her back to the ice cream shop they visited the other day.[10]

(4)     After Smith told L.F. to get ready for bed, Smith and Johnson had a heated argument.[11]  Smith testified that they argued about Johnson's failure to join her at the grocery store earlier in the day.[12]  Johnson testified that they argued about Smith and L.F.'s visit with L.F.'s father while Johnson was out of town.[13]  While Johnson and Smith argued, L.F. called Smith to the bathroom and told Smith that her "pee pee stings[.]"[14]  L.F. used the phrase "pee pee" to refer to her vagina.[15]  Smith assumed that soap had caused the pain and instructed L.F. on how to clean herself.[16]  Smith then returned to her argument with Johnson and, shortly after, put L.F. to bed.[17]  At trial, Johnson disputed that L.F. ever called for Smith from the bathroom.[18]

---

[10] *Id.* (Tr. 69:19–70:08).

[11] B7 (Tr. 23:15–23:20); B63–64 (Tr. 75:01–78:13).

[12] B7 (Tr. 23:15–23:20).

[13] B63–64 (Tr. 76:13–78:02).

[14] B7 (Tr. 23:20–24:03).

[15] *Id.* (Tr. 24:08–10).

[16] *Id.* (Tr. 24:02–06).

[17] *Id.* (Tr. 24:13–18).

[18] B63 (Tr. 73:22–74:05).

3

(5)     Between 11 p.m. and midnight, Smith joined Johnson in bed and went to sleep.[19] Smith testified that Johnson woke her up by saying, "I'm afraid."[20] When Smith asked him what he was afraid of, Johnson responded: "I'm afraid of children."[21] Smith continued to press him on the subject, and Johnson answered: "I may have touched L.F."[22] Smith immediately woke L.F. and asked her what she meant when she said that her "pee pee stings[.]"[23] L.F. responded that Johnson had rubbed his penis on her vagina.[24] Smith took L.F. upstairs and left her in the care of Mama Marie.[25] Smith returned downstairs and found Johnson emotional and, at times, aggressive.[26] Smith locked Johnson in the basement and began hiding the knives from the kitchen.[27] In the early morning, Smith called the police.[28]

---

[19] B7 (Tr. 25:18–22).

[20] B8 (Tr. 26:05–09).

[21] *Id.* (Tr. 26:08–11).

[22] *Id.* (Tr. 26:11–14).

[23] *Id.* (Tr. 26:15–23).

[24] *Id.* (Tr. 27:01–06). L.F. had referred to Johnson by his nickname, Tah. *See* B6 (Tr. 18:20–19:03).

[25] *Id.* (Tr. 27:09–19).

[26] B20–21 (Tr. 77:08–80:18).

[27] *Id.* (Tr. 78:03–79:11).

[28] B8 (Tr. 29:13–14).

4

(6) Police officers removed Johnson from the house.[29] At this time, Smith did not tell the officers what L.F. had told her.[30] Smith then called L.F.'s father to tell him what had occurred.[31] L.F.'s father instructed Smith to wait for him so that they could go to the police station together to tell the story.[32] Smith and L.F.'s father went to the police station later that day, but were told to come back the next day.[33] After the officers were informed of the child's statements, they visited Smith's house, took photographs, and collected potential evidence.[34] No seminal fluids were found.[35] A physical examination of L.F. did not yield any findings consistent with abuse.[36]

(7) On February 14, 2022, the Child Advocacy Center ("CAC") interviewed L.F.[37] L.F. stated that, on February 9, 2022, Johnson took L.F. to his bed, told L.F. that her body was pretty, and rubbed and inserted his penis into her

---

[29] B9 (Tr. 31:18–20).

[30] *Id.* (Tr. 31:09–20).

[31] *Id.* (Tr. 32:01–04).

[32] *Id.*

[33] *Id.* (Tr. 32:06–33:01).

[34] B47 (Tr. 09:01–12:02).

[35] *Id.* (Tr. 12:18–19).

[36] B49 (Tr. 20:02–10).

[37] B38 (Tr. 146:05–09).

vagina.[38]  L.F. also stated that, on multiple occasions, she had touched Johnson's penis at his request.[39]  After the CAC interview, the police interviewed Johnson.[40] Johnson admitted that L.F. had touched his penis two to three times.[41]

(8)    The State charged Johnson with rape, three counts of sexual abuse of a child by a person in a position of trust, authority or supervision, and six counts of unlawful sexual contact.[42]  Before Johnson testified at trial, the State asked the court to rule that any testimony by Johnson about his sex life with Smith was irrelevant and improper.[43]  Johnson's counsel responded that, although he did not intend to ask Johnson about his sex life with Smith, counsel stated that such testimony was potentially relevant.[44]  He also contended that, in any event, the court could not unduly interfere with Johnson's right to defend himself.[45]  The court ruled that testimony about Smith's sexual behavior was irrelevant and inadmissible.[46]

---

[38] Ex. 1, *State v. Johnson*, N2202009839 (Del. Super. Ct. July 19, 2024) (CAC Interview at 12:03–19:33).

[39] *Id.* (CAC Interview at 36:54–42:05).

[40] B51–52 (Tr. 28:21–29:06).

[41] B71 (Tr. 108:15–18).

[42] App. To Appellant's Opening Br. at A11–15 (Re-Indictment at 1–5).

[43] B57 (Tr. 49:11–50:04).

[44] *Id.* (Tr. 50:06–11).

[45] *Id.* (Tr. 50:22–51:03).

[46] B59 (Tr. 57:04–58:14).

6

(9)     When asked about the subject of Johnson's argument with Smith, Johnson testified that "the context" of the argument concerned Smith's potential infidelity with a client while working as a massage therapist.[47]   The court intervened and instructed the jury to disregard Johnson's statement about Smith's sexual behavior.[48]   After hearing all the evidence, the Superior Court jury convicted Johnson of all counts.  He was sentenced to 63 years of incarceration followed by probation.

(10)     On appeal, Johnson argues that the Superior Court erred by preventing him from testifying about Smith's sexual behavior.  According to Johnson, the testimony was relevant because Smith's sexual behavior, including an alleged affair with L.F.'s father, was a motive for L.F.'s allegations against him.  In response, the State argues that (1) Johnson waived the argument by failing to challenge the evidentiary ruling at the trial-level; (2) the Superior Court did not abuse its discretion in its evidentiary ruling; (3) there was no constitutional violation; and (4) any error was harmless.  We review claims of constitutional violations *de novo*[49] and a trial court's evidentiary rulings for whether the court exceeded its discretion.[50]

---

[47] B63–64 (Tr. 75:07–78:23).

[48] B64–66 (Tr. 79:03–85:20).

[49] *Coles v. State*, 959 A.2d 18, 24 (Del. 2008) (citing *Jones v. State*, 940 A.2d 1, 9–10 (Del.2007)).

[50] *McCrary v. State*, 290 A.3d 442, 454 (Del. 2023) (citing *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015)).

(11) The Sixth Amendment to the United States Constitution protects a criminal defendant's right to present a defense to the charges brought by the State.[51] This includes "the right to present the defendant's version of the facts . . . to the jury so it may decide where the truth lies."[52] "But the defense does not have an unfettered right to present any evidence it wishes."[53] "[T]he Constitution leaves to the judges . . . 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"[54] Although a court's "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve,"[55] excluding evidence is arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused."[56]

(12) Here, the Superior Court found that Smith's sexual behavior was irrelevant and unfairly prejudicial.[57] As the court explained, Johnson did not

---

[51] *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

[52] *Washington*, 388 U.S. at 19.

[53] *Burrell v. State*, 332 A.3d 412, 428 (Del. 2024).

[54] *Crane v. Kentucky*, 476 U.S. 683, 689–90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

[55] *Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987).

[56] *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citing *Rock*, 483 U.S. at 58; *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington*, 388 U.S. at 22–23).

[57] B57 (Tr. 51:04–10).

mention Smith's sexual behavior in his police statement,[58] and neither Smith nor L.F. testified about Johnson's sexual practices.[59] In any event, the court did not prevent Johnson from arguing to the jury that an altercation was the motive behind the allegations against him. Johnson could have offered such testimony "in a much more sanitized way without bringing up some illicit affair as a massage therapist."[60] Indeed, Johnson testified about his confrontation with Smith about his belief that Smith met up with L.F.'s father while he was traveling out of town.[61] Defense counsel also cross-examined Smith about her talking with L.F.'s father before reporting L.F.'s allegations to the police.[62] The court's exclusion of Johnson's testimony about Smith's sexual behavior did not prevent Johnson from asserting a complete defense at trial.

(13) Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[63] For the reasons discussed above, we agree with the Superior Court that Smith's sexual behavior was irrelevant to the

---

[58] *Id.* (Tr. 51:10–12).

[59] B58 (Tr. 53:19–21).

[60] B64 (Tr. 80:01–03).

[61] B63–64 (Tr. 75:07–77:05).

[62] B17–18 (Tr. 65:04–69:15).

[63] D.R.E. 401.

elements the State was required to prove. Smith's sexual behavior did not have any tendency to make any fact of consequence more or less probable. The Superior Court did not exceed its discretion when it determined that Smith's sexual behavior was irrelevant.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice